## Charles Greeley and others v. John Stilson and another.

*Trover : Transitory action : Timber : Trespasser.* Trover is a transitory action; and an action for the conversion of timber is not made local by being brought against the original trespasser who cut the trees.

*Change of venue : Discretion.* A motion to change *venue* is discretionary and not subject to review on error.

*Value : Opinion : Different markets : Presumption.* The value of logs at one place, cannot be proved by the opinion of a witness having no knowledge of values there, and showing no facts from which it could be got at as compared with values elsewhere. Knowledge of one market justifies no presumption of knowledge of others.

*Conversion : Damages : Value.* Defendants who have sold property and are sued for its conversion, are not liable for value beyond what it would have been before, or at the time and place of conversion. Value subsequently and elsewhere is not material.

*Timber : License : Statute of frauds.* A parol license to cut timber for a fixed price for stumpage is not invalid, and is not covered by the statute of frauds, either as a sale of an interest in lands, or as a sale of chattels ; and the licensee is protected by it in regard to all trees cut before revocation.

*Charge to the jury : License.* It is error to leave it to a jury to determine whether such a transaction is a license or sale. It can be nothing but a license.

*Heard April 16 and 17. Decided April 22.*

Error to St. Clair Circuit.

*A. E. Chadwick,* for plaintiffs in error.

*O'Brien J. Atkinson* and *Trowbridge & Atkinson,* for defendants in error.

27 MICH.—20.

CAMPBELL, J.

Plaintiffs in error were defendants below, and were sued in trover for the conversion of certain logs claimed to have been cut from lands of Stilson & Stevens, in Alpena county. Judgment was recovered against them in the circuit court for St. Clair county.

A motion for change of venue was made in the court below, based upon the ground that all the transactions took place in Alpena county, and on the further ground that defendants had been fraudulently subpœnaed into St. Clair county, and then served with process in this suit. The case had been tried before, but no verdict had been found.

A motion for change of venue is, unless where otherwise provided by law, a matter which rests in discretion, and is not subject to review.   A fraudulent use of process may be punished, and relief may be granted, where it is brought in proper time to the notice of the court.   But after plea and trial any legal claim to rely upon the misconduct in the service was no longer beyond the ordinary discretion of the court.

But the question was further raised on the trial whether an action of trover for logs cut and carried away from land in Alpena county and sold in that county can be lawfully brought in St. Clair county.

The statute makes actions for trespass on lands, and for injuries to lands, local. Both trespass and waste would come under such a restriction, and there is much force in the claim that the testimony which would be given in those actions would be the same as that in trover for the conversion of the same property, in the most important respects.

A difference has been recognized, however, arising out of the fact that until the timber has become personalty, by being severed from the soil, it is not subject to conversion, and that wherever it may be moved in an unmanufactured form, whether in the same or in another county, a conversion

may be charged as taking place where it is sold, or otherwise disposed of or appropriated, as well as on the first removal. Treating it as no longer freehold when it has become personalty, the law distinguishes actions for its conversion, from those for the act whereby it became changed from realty, and puts all suits for the wrongful conversion of chattels on a similar footing, and makes them transitory. The distinction is technical, but it seems to be well established. This action, therefore, was legally brought in St. Clair county.

To prove the value of the logs, one of the plaintiffs, John Stilson, was asked what it would be, without having been previously examined as to his means of knowledge. This was objected to, and being admitted, defendants excepted. On cross-examination he said he did not know of any logs being sold for the price mentioned; that he was not delivering any logs that year, and did not know the market price of logs at Alpena that year. He was then allowed, under objection and exception, to state on re-examination that he got at the value from the quality of the timber and the market value of timber at Alpena. Being further asked, under similar objection, what were his means of knowing the value of lumber at Port Huron, Alpena, Saginaw and other places, he answered, by inquiring that year; that his business was getting out saw-logs, and had been for fifteen years, at Port Huron and Saginaw. His means of getting at the value of logs were, that he inquired the price of lumber at Alpena, and he stated he did not know how far Alpena was from Saginaw or Port Huron.

As the defendants sold the logs, they were chargeable for their value at the time and place of sale, but no later; and this value, therefore, was necessary to be shown. When the witness was first sworn he had shown no knowledge of any kind. On his cross-examination he stated explicitly that he did not know the market value of logs at Alpena, and where the conversion relied on is a sale, the value is

the only admissible test. The price obtained by the defendants would be admissible against them, though not binding in their favor. He does not, on his re-examination, show any knowledge of the value of logs at that point. He does not show that he had any knowledge of the cost of manufacturing at Alpena, nor, if he had, does he show that logs could be sold for the price of lumber less the cost of sawing, or what were the usual sawyer's profits, if any. It cannot be presumed without proof, that a knowledge of one market implies a knowledge of another in logs any more than in other articles. It was held in *Gilbert v. Kennedy, 22 Mich., 117,* that evidence of value in other markets, where the value in the home market was the test, could not be given unless it should also appear how far they operated to affect the home market. In *Powers v. Irish, 23 Mich., 429,* it was recognized as improper to attempt to prove a Chicago value for lumber on the Grand River. And it is impossible to assume, without distinct testimony, that any one can know the value of logs in a particular market without knowing actual prices or estimates in that market. He gives no values or data for getting at any of the elements on which he professed to act, either of the cost of sawing, the value of lumber, or the prices or cost of logs or lumber elsewhere. His testimony, therefore, stood in the case as a basis of recovery, without any showing that his opinion was admissible. The charge did not cure the defect, but left it to the jury with assurances that they might follow it. This testimony should not have been received.

Several errors are alleged upon the charge given by the judge apart from his rulings upon the requests of the various parties, but as this charge is not confined to one subject, but covers a number of independent questions, the single general exception to it is not sufficient to bring it up. The charge can not be examined at all, except as to such parts of it as respond to the specific points presented to him for rulings, or were meant to explain them.

The principal question open on the charge on which the case appears to have turned, arises on the rulings upon an alleged arrangement whereby defendants below claimed to have cut the timber.    Evidence was given tending directly to prove an arrangement whereby Stilson authorized them to cut the timber for one dollar per thousand feet stumpage, which was to be paid over for the plaintiffs to Oldfield & Co.   If such an arrangement was made so as to bind Stilson, it is not disputed but what it would be a complete defense.    The parties were at issue on the fact.

The bargain, as sworn to by Oren Erskine, was that he was to cut it and have it scaled by Thomas H. Hunt and leave the stumpage with Oldfield.    It was testified that the stumpage was paid and the logs scaled by Hunt.    There was evidence before the jury that every thing had been done that the bargain called for.

The plaintiffs obtained a charge that "if the value of the property exceeds fifty dollars, no sale would be valid from Stilson to Erskine unless part of the property was received by Erskine or part of the price paid to Stilson."    There was no evidence of any other sale than that testified to by Oren Erskine.    In a subsequent part of the charge the court informed the jury that if it was a license, it would be good, but if a sale, it would be bad unless on the conditions named, which were not in proof, and were not possible in such a case.

The transaction was one which could only be in law regarded as a license.    It is the very instance frequently given in the definitions to explain that word as creating as estoppel against complaining of acts done under it before revocation, or from preventing the enjoyment of the results of what was thus done.    In *Thomas v. Sorell, Vaughan 35,* it was held by Vaughan, C. J., that a license, coupled with the grant of an interest, was irrevocable, so far as it was essentially necessary to the enjoyment of the grant.    In illustration of this principle he put the case of a permission to cut down a tree on the land of another, and to

come on the land at any subsequent period for the purpose of removing it. This was said to be a mere license as to the right of entry, but to amount to the grant of an absolute interest in the tree as soon as the permission to cut it down was executed. The cases are brought together and discussed in *2 Am. Lead. Cases, 688, et seq.* And it seems to be well settled that such a permission, while it operates as a sale or grant of that which, by the execution of the license, is to be transformed into a chattel, is nevertheless entirely outside of the statute of frauds, not being more than a license until executed. It is not a sale of an interest in lands, and it is not a sale of an existing chattel, but of a future one.

The instruction given was not based on any thing in the case which could call for it as applicable to a sale of chattels under the statute of frauds, and it could only be understood as applying to the transaction sworn to by defendants' witnesses, and had an inevitable tendency to mislead the jury in that regard. The whole defense turned upon this question, and the effect of the charge was to throw a doubt over its validity, whatever might have been their view of the relative merits of the opposing witnesses. The question of earnest money or partial delivery could not apply to such a transaction.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.