WALTER N. HALDEMAN v. JOSEPH H. BERRY AND THOMAS BERRY.

*Pleading—Recoupment—Damages.*

1. A claim of recoupment must grow out of the contract sued upon, and not out of another and different one. *Morehouse v. Baker*, 48 Mich. 335, 339; *Holland v. Rea*, Id. 218.

    So *held*, where plaintiffs failed to prove the contract sued upon, and defendants sought to prove another and different contract, and then to recoup damages for its breach.

2. In this case it is held that the amount of damages which defendants could recoup, if any, should have been found by the jury, upon a proper submission of the evidence to them, and not by the court, and that this error would have necessitated a reversal of the judgment and granting of a new trial.

3. An examination of the opinion is essential to a correct understanding of the remaining questions discussed, which are in the main questions of fact purely.

Error to Wayne.    (Look, J.) Argued February 15 and 18, 1889.    Decided April 12, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Bowen, Douglas & Whiting* (*F. Hagan* and *Kilbourne & Humphrey*, of counsel), for appellant.

*William H. Wells*, for defendants.

MORSE, J. The agent of the defendants, one James H. Mason, of Detroit, Mich., contracted on their behalf with one A. B. Dean, of Louisville, Ky., to purchase of said Dean 1,000 tons of free asphaltum, at $40 per ton, to be delivered in Detroit as soon and as fast as said Dean desired. This contract was closed by letter of acceptance from Mason to Dean, of date November 9, 1881. December 10, 1881, Mr. Dean died, of yellow fever, in Cuba, where the asphaltum to be delivered under the contract was being mined. February 14, 1882, Lewis Collins, an attorney, of Louisville, and administrator of the estate of Mr. Dean, visited Detroit in the interest of the plaintiff. Haldeman, who had purchased the Dean contract, and as the agent of Haldeman entered into a contract with Mason, who was acting for the defendants, who constituted the firm of Berry Bros. Out of this contract, and the subsequent dealings and negotiations between the parties, this suit arises.

The plaintiff declared in *assumpsit* upon the contract as he understood it, substantially as follows: That the plaintiff agreed and promised to furnish and deliver to the defendants 1,000 tons, of 2,000 pounds each, of free asphaltum, one-half at $38 per ton, and one-half at $40 per ton, to be delivered at Detroit in cargoes or installments as the plaintiff might be able to ship the same, but with the agreement that not more than 500 tons should be delivered before January, 1883, and the remainder before July, 1883; also a cargo of from 100 to 200 tons, at $38 per ton, to be delivered at Detroit as soon as the plaintiff should be able to mine and transport the same, but within a reasonable time. Payment was to be made in 30 days after delivery, with a discount of 5 per cent. for cash. Plaintiff was also to return to defendants between 9 and 10 tons of asphaltum, which

Dean had borrowed of defendants, and promised to return.

That on December 27, 1882, the plaintiff delivered, and the defendants received and accepted, under said contract, 80 and 1430-2000 tons; that defendants applied 9 and 399-2000 tons of the same in payment of the amount borrowed by Dean, and paid for the balance according to the contract. The plaintiff avers that, within the time prescribed by said contract, and in accordance therewith, on February 12, 1883, at Detroit, he was ready and willing, and then and there tendered and offered, to deliver to said defendants another cargo of asphaltum, to wit, 200 tons, of 2,000 pounds each, of free asphaltum, of the proper quality, which the defendants refused to accept; and that on February 15, 1883, the said defendants waived in writing any further tender of asphaltum by plaintiff, and utterly refused to accept or pay for any more asphaltum on said contract. He also declared upon the common counts. His bill of particulars filed in the cause called for damages because of the defendants' refusal and failure to pay for 1,000 tons of asphaltum under the contract as set forth in the declaration, as follows:

| | |
|---|---|
| 1,000 tons asphaltum, at $25 | $25,000 00 |
| 9 and 399-2000 tons asphaltum, at $40 | 367 98 |
| Total | $25,367 93 |

The defendants pleaded the general issue, and gave notice thereunder that a contract was entered into between the plaintiff and defendants, on February 17, 1882, wherein and whereby the plaintiff undertook to deliver to the defendants, at Detroit, from 100 to 200 tons of asphaltum, at once, for the sum of $38 per ton, and 1,000 tons of asphaltum, one-half at $38 and one-half at $40 per ton, 200 tons thereof to be delivered about the month of July, 1882, 300 tons about the month of Novem-

ber, 1882, and the remaining 500 tons, at about the same rate and time, in the year 1883; that the defendants undertook to receive and pay for the same as above; but, while they were ready and willing to so receive and pay for the same, the said plaintiff, though often requested so to do, wholly failed, refused, and neglected to perform his part of the said contract, to their damage of $10,000, which they claim to recoup against the demands of the said plaintiff.

It will be seen that both parties, in their pleadings, claim a contract for the delivery and acceptance of asphaltum, but the agreements are radically different in the time and amount of delivery, and are not identical in date, the contract set up by plaintiff being laid as of February 14, 1882. The circuit judge, Hon. William Look, of the Wayne circuit court, found with the defendants, and, practically taking the entire case from the hands of the jury, directed them to find a verdict for the defendants in the sum of $13,364.14. This was found afterwards to be based upon, in part, an erroneous computation, and judgment was entered for the sum of $11,384.16. It is admitted by both parties that the contract, in every essential particular, was in writing. There is also no dispute but that Mason had full power and authority to act for the defendants, as did Collins for the plaintiff, and all the correspondence, which is voluminous, and all the dealings of the parties, were carried on by Mason and Collins, representing their respective principals.

The first inquiry to be determined is what was the contract between the parties? We do not think this portion of the case should have been submitted to the jury. It was in writing, and for the court to construe. The contract is embodied in the following memorandum, and two letters:

" DETROIT, MICH., February 14, 1882.

" This *memoranda* witnesseth, that whereas, A. B. Dean, Esq., of Louisville, had contracts with James H. Mason, Esq., of Detroit, to deliver 100 to 200 tons (a cargo) of asphaltum in Detroit, at $38 per ton of 2,000 pounds, to be delivered in January, 1882, and also to return certain small lots borrowed from Mr. Mason free of all charges, and also contracted to furnish Mr. Mason 1,000 tons, of 2,000 pounds each, same quality as heretofore sent, at $40 per ton; and whereas, the sudden death of Mr. Dean, in Havana, has delayed the fulfillment of his said obligations.

" Now, therefore, the undersigned, having bought a contract for the purchase of asphaltum, and having agreed that Mrs. Dean, widow of said A. B. Dean, shall have all benefits from carrying out same according to Mr. Dean's contracts, after said Haldeman shall have been re-imbursed for certain security debts paid by him, now makes these concessions by way of putting Mr. Mason just where he would have stood had Mr. Dean lived to fill the contract. He will deliver the first cargo, or 200 tons thereof, at $38 per ton. He will return all borrowed asphaltum delivered in Detroit. He will deduct $2.00 per ton on 500 tons of the 1,000-ton order. Also the further concession of delivering not more than 500 tons of the 1,000 before January 1, 1883, and the remainder before July, 1883. The weights and quality shall be subject to approval at Detroit.

" And, further, having bought a contract for the purchase of 2,000 tons per year for five years, made by Mr. Dean while in Havana, and sold to me by order of the Jefferson county court, at auction sale, I hereby agree, after filling this 1,000-ton order, to show said contract, and the whole cost of mining and delivering in Detroit, to said Mason, with the right on his part to buy the same outright, or an interest in same, for a reasonable sum, to be agreed upon.

" W. N. HALDEMAN,<br>
" Per Lewis Collins, Agent."

This memorandum was left with Mason for him to look over and sign if agreeable. Mason returned a copy to Collins in the following letter:

"DETROIT, MICH., Feby. 14, 1882.
"LEWIS COLLINS, ESQ., Agent for W. N. Haldeman,
                    "Louisville, Ky.

"*Dear Sir:* Inclosed herewith I hand you a copy of the memorandum, left with us last night, which I was to mail to you. As stated to you at our interview yesterday, it would be very inconvenient for me to have this order of 1,000 tons of asphaltum delivered faster than I require it. When at Louisville, last summer, Mr. Dean gave me to understand that it was very difficult to mine, and that it would be very difficult, and, in fact, he would not agree to deliver faster than he had already been doing; and it was for this reason I gave him the order for the 1,000 tons, to be delivered as fast as he liked, believing from what he told me that it would take about two years to deliver it; or, in other words, I was simply ordering a two years' supply. There is no doubt but I shall need the whole lot within the time mentioned, and possibly very much more, but want it understood that it is to be delivered in such quantities, and at such times, as I can take care of it,—say the first lot, from one to two hundred tons, or one cargo, at once, or as soon as you can get it here; another cargo, of say two hundred tons, about July 1, and the balance of the 500 tons, in the fall,—say about November; the second 500 tons to be delivered about the same way during 1883. By arranging the delivery in this way, I shall not be inconvenienced, and the arrangement as made and taken between Mr. Dean and myself will be carried out. Should I need asphaltum faster than is here mentioned, I can, of course, let you know long enough ahead, so that you can get me a cargo sooner. You will understand that the quality is to be fully equal to the last cargo of free asphaltum sent me, and the longer it can lay on the surface of the ground, but not exposed to the rain, the better, as it will be getting dryer, and the less water there is in it the better.

"Inclosed I hand you a *memoranda* of all the asphaltum loaned Mr. Dean, which is to be returned to me in Detroit. The items of expense for shipping I will deduct from my first payments for asphaltum. Hoping that all is now satisfactory, and that we shall have no misunderstanding in the future, I am
                    "Yours very respectfully,
                         "JAMES H. MASON."

To this letter Collins replied as follows:

"LOUISVILLE, KY., February 17, 1882.
"JAMES H. MASON, ESQ.,
        "Cor. Lieb and Wight streets, Detroit, Mich.
"*My Dear Sir:* Your letter and inclosures reached me this afternoon about the same time as your answer to my telegram. I think we understand each other fully, although your letter seems to desire the delivery extended beyond July, 1883. I don't think we shall differ about that. That hill is most too far off now to begin to study about climbing without trouble, as we shall in regard to the first cargo in case it runs over 200 tons. I have telegraphed to hasten its shipment. Expect answer to-morrow, when I shall decide about going. Yes, just address all correspondence to me.

"By the way, I might negotiate a sale for you of a Com. gas-machine to our orphanage, in the spring. It could not be put in well until July. I will write later for full particulars, and to learn what commission you could give me.             "Very truly yours,
                "LEWIS COLLINS, Agent."

It would seem from an examination of this contract, as evidenced by these writings, that, at the time it was made, the plaintiff was more anxious for an early delivery of the 1,000 tons than were the defendants, but, as matters turned out thereafter, the wishes of the parties were changed. It would appear from the testimony that the plaintiff was unable to deliver any asphaltum until December, 1882, and was explaining his delay, and the defendants were anxious for asphaltum, and hurrying up its delivery, and complaining of the delay. The contract certainly provided for the delivery of the first cargo, of 100 or 200 tons, at once, or as soon as it could be got from Cuba to Detroit. As it was to have been delivered in January, 1882, it is clear that the understanding of the contract was that there were no hindrances in the way of its being delivered soon. It was not contemplated that it must be mined before it could be shipped. It is also evident that both parties contemplated, and the agree-

ment was, that the first 500 of the 1,000 tons should be delivered in the year 1882, and close about November, although it cannot be said that a delivery, or tender of delivery, in December would not have been sufficient. The letters show that both parties expected that there would be no difficulty in getting the 500 tons in the year 1882, and the only fear was that of the defendants, that it might be delivered faster than they wanted it. The contract sued upon by the plaintiff is not supported by the proofs, and, unless the time of delivery was waived by the defendants, the circuit judge was right in holding that the plaintiff could not recover upon the same. In such case, under his declaration, the plaintiff could only maintain his suit for the value of the 9 and 399–2000 tons mentioned in his bill of particulars.

We do not propose to give the whole correspondence between Mason and Collins. Suffice it to say that from the closing of the contract up to June 27, 1882, numerous letters and telegrams passed between them, in which Collins was promising soon to send a cargo, and apologizing for not doing so, and Mason was complaining and inquiring, stating in almost every letter the absolute need at once of the asphaltum. The whole transaction between the parties up to this time was in writing. June 10, 1882, Mason wrote, stating that trade and money had been lost by the delay, and ended as follows:

"As soon as you get advices of shipment let me know at once."

Collins replied of date June 27, 1882, and stated in the letter that he expected to be wired as to date of sailing of ship. "When it comes I'll notify you." No further correspondence took place between them until November 28, 1882, when Collins sent the following letter:

"LOUISVILLE, KY., November 28, 1882.
"JAMES H. MASON, ESQ.,
          "Detroit, Mich.

"*My Dear Sir:* Our patience in waiting is at last rewarded. I am in receipt of a cablegram stating a schooner had sailed on yesterday with 100 tons, more or less, of Cuban asphaltum. I know you are rejoiced to hear it. I shall have it forwarded to you by rail without delay, and shall ask you to pay for half of it at $40 per ton, and $38 per ton for the other half. I will ask your indulgence until the next cargo for the replacing of 20 tons loaned by you to Mr. Dean.

                    "Yours very truly,
                              "LEWIS COLLINS."

Mason replied as follows:

          "DETROIT, MICH., December 7, 1882.
"LEWIS COLLINS, ESQ.,
          "Louisville, Ky.

"*Dear Sir:* Your favor of the 28th instant came duly to hand, and same has my careful attention. I had given up all hope long since of getting any more asphaltum from you, and, as I could not afford to sacrifice the business that I have been so long building up, I had no other alternative only to look elsewhere for my supply of asphaltum, and succeeded in finding an article that suits me in all respects as well, if not better, than what I got from Mr. Dean, and, after waiting long and patiently for you to send me the asphaltum you contracted to send, and after suffering great loss and inconvenience in consequence of your failure to fulfill your part of the contract, I have made a large purchase of several hundred tons, which is now being delivered as fast as my wants demand. I will, however, take the 100 tons now *en route*, but not to apply on any contract heretofore made. Later on, should you have any more asphaltum, I shall be pleased to hear from you, and, should I be in want of any, would buy, provided the price and quality is satisfactory.

                    "Yours truly,
                              "JAMES H. MASON."

Below is the reply of Collins:

"LOUISVILLE, KY.

"JAMES H. MASON, ESQ.,
          "Detroit, Mich.

"*Dear Sir*: Your very kind favor of the 7th is received. I am very glad, indeed, to learn that you were able to supply your necessities in the way of asphaltum. I really felt an anxiety about it, as I was sure no Cuban had been shipped by anybody before the cargo now coming, and I have often wondered how you were doing without a supply. I thank you for the expressed intention to receive the 100 tons now on their way to you, and to pay therefor $38 and $40 per ton for equal qualities. This asphaltum is so superior that I trust you will want much more of it. Without awaiting any further communication, you will please weigh same carefully on arrival, and pay all charges, and forward to me statement of weights and charges, with N. Y. exchange for the balance due. I will not be able to visit you at this time as I had hoped.
          "Very respect.,
                    "LEWIS COLLINS."

Whatever evidences of waiver there may have been in the correspondence on the part of Mason before this time, we find in this letter of December 7, 1882, a flat refusal to take the coming cargo, or any more asphaltum, upon the contract, and the letter of Collins in reply is certainly an assent to this action. This was, therefore, an ending beyond question of the old contract between the parties.

But the counsel for the plaintiff contend that by the subsequent actions and dealings of the parties the contract was renewed, and put in force again. The asphaltum did not reach Detroit as soon as expected, and not until January, 1883. On the 5th of that month Mason inclosed to Collins a check for $600, to apply on the shipment, and in the letter said:

"Mr. Dean always allowed me 30 days, or, if paid within 30 days, I got 5 per cent. discount. Shall expect you to do the same."

Collins replied, January 6, 1883, saying:

74 MICH.—28.

"Although nothing has been said about 5 per cent. off for cash as between us, I can't be captious with you. I therefore agree that you may deduct 5 per cent. from the balance due in remitting Monday, with statement, as I want a full and fair statement of accounts to January 10, A. M., with Mr. Haldeman before leaving."

January 10, 1883, Mason sent statement and letter, in which he said, among other things:

"I have also deducted 18,399 pounds, which I loaned to you at sundry times, and which was to be returned to me, and deducted from your first shipment,"—

And closed his letter as follows:

"As I said to you in a previous letter, I had already purchased a very large supply, enough to last me a year or more, before you made this shipment, so that you can see that I am paying a long time in advance of my needs for asphaltum, and shall not need any more for a long time. When I am in want of any more I will correspond with you, should you be in the business. I have added $1.10 for exchange on the inclosed check, which I trust will be satisfactory. I have been on the sick list for several days, which is the cause of my not sending this sooner. Hoping all will be satisfactory, I am

"Yours truly,
"JAMES H. MASON."

Mason paid for this shipment, which amounted to about 80 tons, at the rate of $40 per ton for one-half, and $38 per ton for the other half, first deducting from the whole amount the asphaltum loaned to Dean. It is insisted that the deduction of the 5 per cent. upon cash payment, and the retaining of the asphaltum loaned to Dean, was a renewal of the old contract, and that the asphaltum received was in reality accepted upon the same. We do not think so. The ending of Mason's letter, in which he asked the deduction of 5 per cent., clearly notified Collins that he did not ask this reduction under the contract, and plainly notified him that if he

required any more asphaltum he would make, by further correspondence with him, a new and other arrangement. In relation to the reduction of the asphaltum loaned to Dean, it must be remembered that the writings composing the contract in the beginning recognized the fact that Mrs. Dean, the widow of A. B. Dean, was the person to be benefited by the carrying out of the contract made by her husband, in case any profit was made, and therefore it was quite natural that Mason should think that he had a right to deduct from the asphaltum received, though it was not accepted upon the contract, the amount the defendant had loaned to Dean.

The next question is as to the right of the defendants to recoup for damages under the contract as claimed by them. It is evident from a study of the record that the defendants had no thought of claiming any damages until after suit was brought against them. They saw fit to determine the contract, and to receive the asphaltum shipped them upon a new arrangement. This they did without claim of damages because of the non-delivery of asphaltum as agreed in the contract.

But, under the circumstances of this case, we are satisfied that the recoupment pleaded by the defendants cannot be maintained. As already shown, the plaintiff sued upon a contract which did not exist. He declared evidently upon the memorandum of February 14, 1882, left by Collins with Mason. This was not the contract. The contract was closed on February 17, 1882, by the reply of Collins to the letter of Mason, which modified and altered the memorandum as to the time of the delivery of the asphaltum. The plaintiff must fail, because he cannot establish the contract he declares upon. Can the defendants, in their defense, prove another and different contract than the one sued upon, and then recoup damages for a breach of such contract? We think this question is set-

tled by previous decisions of this Court. *Morehouse v. Baker*, 48 Mich. 335, 339 (12 N. W. Rep. 170); *Holland v. Rea*, Id. 218 (12 N. W. Rep. 167). These cases hold that the claim of recoupment must grow out of the contract sued upon, and not upon another and a different one.

It is argued by the counsel for the defendants that this question was not raised in the trial court, and cannot be considered here. But, under the law as it now stands, the parties have a right to assign error upon the charge of the court when no exception was taken to the same upon the trial, and we think the question is therefore legitimately before us.

There is another thing. The court, at best, erred in directing the amount of the verdict. There was no proper proof to support the figures named by the circuit judge, if any recoupment in damages had been permissible. The amount of damages should, in any event, have been found by the jury, upon a proper submission of the evidence to them, and not by the court. This error would have necessitated a reversal of the judgment, and a granting of a new trial. In such case, for the benefit of the parties, it would have been our duty to have passed upon this question, and to have determined the law in this respect.

The judgment of the court below must be reversed. and a new trial granted, with costs of this Court to plaintiff.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred.