CARRIE E. WHITE v. ROBERT KING.

*License to cut timber—Bill of sale—Authority of agent.*

1. While the absolute title to standing timber in this State will not pass except by deed, in the same manner as the fee of the land, a license to enter and cut and remove such timber can be given, which, unless revoked before the timber is cut, and thereby converted into personalty, will pass the title to so much as has been severed from the soil; citing *Greeley v. Stilson*, 27 Mich. 157; *Haskell v. Ayres*, 35 Id. 90; *Wetmore v. Neuberger*, 44 Id. 362; *Spalding v. Archibald*, 52 Id. 365.

2. A bill of sale to a third person of standing timber, with license to cut and remove it, is no more than a license, and will not operate as a revocation of a former license until notice is given to the first licensee.

3. This case involves the question of the authority of a third party to act as agent for the owner in the sale to plaintiff of standing timber which the owner afterwards sold to the defendant,

which question it is held should have been submitted to the jury upon the testimony.

Error to Otsego. (Kelley, J.) Argued June 30 and July 1, 1891. Decided July 28, 1891.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*A. A. Crane* (*Oscar Adams*, of counsel), for appellant.
*Geer & Williams*, for defendant.

MORSE, J. This is an action of replevin, brought to recover a quantity of saw-logs cut from 40 acres of land owned by Edward S. La Salle, of Portland, Mich., and located in the county of Otsego. The circuit judge directed a verdict for the defendant. This was error.

The plaintiff showed that she purchased the timber standing upon the land of one A. A. Crane. Crane testified that he sold the timber upon the authority of two letters received from La Salle, which letters are as follows:

"PORTLAND, Mich., May 19, 1888.
"COOPER & CRANE,
"Gaylord, Mich.
"*Dear Sirs:* I have had several chances to sell a piece of land I have in Bagley township, or to sell the pine on it. I don't care to sell the land, but perhaps the pine will sell now as well as ever. If you are still in the real-estate business, I wish you would look it over, and see what the pine is worth; and if there is enough to make it any object I think I will let you sell it, as you can attend to it much better than I can. Robert King, of Lapeer, who has a shingle-mill in or near Gaylord, wrote to me two months ago, wanting to buy the land, and a few days ago he came to Portland to see me. 'So if you will look it up, and report as soon as convenient, I can tell you at once what to do. No estimate was made on the pine on the list on R. R. books. I have the impression that there are not more than a dozen or

fifteen trees. The land is the S. W. ¼ of the N. W ¼ of Sec. 11, town 30 N., R. 3 W.,—40 acres.

"Yours respectfully, E. L. LA SALLE,
"Portland, Mich."

"PORTLAND, Michigan, May 28, 1888.
"A. A. CRANE,
"Gaylord, Mich.:
"Yours of the 24th received. I did not suppose the pine was in so bad a condition. You may sell the pine if you can. I have written to King that I would leave it to you. Of course you will get all you can for it. Have you any idea what the land will bring after the pine is off? Possibly I may want to sell it before next spring.

"Yours truly, E. L. LA SALLE."

July 11, 1888, Mr. Crane sold the pine timber to plaintiff for $115, of which she then paid $15 down. She paid the balance August 11, 1888, when Crane gave her the following receipt:

"GAYLORD, Aug. 11, 1888.
"Received of Mrs. John White $100, balance due for pine timber on the S. W. ¼ of the N. W. ¼; Sec. 11, town 30 north, range 3 west.

"E. L. LA SALLE.
"Per A. A. CRANE, Agent."

Plaintiff entered upon the land about July 11, 1888, under a parol license granted by Crane as La Salle's agent, and cut the timber into saw-logs, preparatory to removal. The cutting was completed September 1, 1888. October 17, 1888, defendant notified plaintiff that he claimed to own the timber, and forbade her removing the logs. This was the first knowledge she had of any adverse claim to the timber by any one. Soon after this notice, defendant removed the logs, against plaintiff's protest, and she brought this suit. Defendant claims that he bought the timber of the owner, La Salle, June 28, 1888, and put in evidence a copy of a bill of sale of that date,

which bill of sale also contained a license to enter upon the land and take off the timber at any time within two years from its date.

The circuit judge was of the opinion that there was no evidence to go to the jury showing that Crane had authority from La Salle to sell the timber to plaintiff. Crane testified that he received the two letters from La Salle, and when they were offered in evidence the defendant's counsel said:

" We will object to them. They are not shown to be the letters of Mr. La Salle. There is no proof that Mr. La Salle ever wrote them. Simply to save the point,—they may and they may not, as far as we know."

The letters were received in evidence. It will be noticed that the first letter refers to the defendant. From this letter it appears that King had written to La Salle, and had also been to Portland to see him, about this land. This appears to have been the occasion of La Salle's writing this letter to Crane. This letter was directed to Cooper & Crane, with whom the record shows that La Salle had had correspondence with reference to this land before. Crane replies to this letter, and receives the second one. When the defendant takes the stand in his own behalf, he testifies that, when he called upon La Salle at Portland, he told La Salle that his name as the owner of this land had been given him by Mr. Crane, and La Salle said that he would write to Crane, and have him place a price upon the timber, and he would sell it, but he had no knowledge of the value of the timber. " He said he would write to Mr. Crane, and I could see Mr. Crane when I came up here, *and perhaps could make a deal with him for the timber.*" He further testifies that about a month afterwards he saw Mr. Crane, and tried to buy the timber of him. Not being able to do so, he

wrote to La Salle that he thought Crane was not doing the fair thing in regard to the land, and that if La Salle wanted to do anything with the defendant, and would place a price upon the timber, he would take it at what it was worth. La Salle wrote in reply, wanting to know if Crane would not make the defendant any price on the timber. We think, with this evidence of the defendant supplementing the letters, the plaintiff was entitled to go to the jury upon the question of Crane's authority to sell the timber, as neither Crane nor the plaintiff received any word from La Salle, or any one else, in contradiction to these letters, until the notice from the defendant of October 17, 1888. If La Salle sold the timber to defendant June 28, 1888, he did so without revoking the agency of Crane, and without the knowledge of Crane or the plaintiff. The plaintiff, having, under the circumstances shown, entered upon the land, and converted the timber into personalty, was entitled to recover the value of the same, if Crane was authorized to sell it as the agent of La Salle.

It is true that the absolute title to standing timber in this State will not pass except by deed, in the same manner as the fee of the land; but a license to enter and cut such timber, and remove the same, can be given, which, unless revoked before the timber is cut, and thereby converted into personalty, will pass the title to so much as has been severed from the soil. *Greeley v. Stilson*, 27 Mich. 157; *Haskell v. Ayres*, 35 Id. 90; *Wetmore v. Neuberger*, 44 Id. 362; *Spalding v. Archibald*, 52 Id. 365. A sale of the land would revoke the license, but in this case the defendant had only a bill of sale of the timber, which was no more than a license. Until the plaintiff received notice of this, it could not operate as a revocation of her license.

Other errors are assigned upon the record, but, as

these are not likely to arise upon another trial, we shall not discuss them.

The judgment is reversed, and a new trial granted, with costs of this Court.

The other Justices concurred.