BERRY *v.* HALDEMAN.

1. PRINCIPAL AND AGENT—EXTENT OF AUTHORITY—USE OF AM-
   BIGUOUS LANGUAGE—ESTOPPEL.
   Where authority is conferred upon an agent in ambiguous
   terms, and the agent, in good faith, adopts a permissible con-
   struction, the principal is estopped from asserting, as against
   third persons having dealings with such agent, that the
   authority assumed in accordance with such construction was
   not the authority intended to be conferred.

2. SAME.
   The assignee of a contract wrote to the other party thereto
   notifying him of the assignment, and that his agent, the
   bearer, was "fully authorized" to do business for him, and
   that he was prepared to carry out the contract. The writing
   was construed by the agent and the other party as conferring
   authority upon the former to enter into a new agreement in
   relation to the subject-matter of the original contract. *Held*,
   that such construction was permissible.

3. SAME—QUESTION OF LAW—SUBMISSION TO JURY.
   The fact that the court, in an action against the principal for
   failure to perform the agreement so made, submitted to the
   jury the question of the agent's authority, instead of reserving
   to itself the construction of the writing, was not prejudicial
   to the defendant.

Error to Wayne; Frazer, J. Submitted October 23,
1896. Decided March 10, 1897.

*Assumpsit* by Joseph H. Berry and Thomas Berry
against Walter N. Haldeman for the breach of a contract
for the sale and delivery of goods. From a judgment for
plaintiffs, defendant brings error. Affirmed.

*Brennan, Donnelly & Van De Mark* and *Frank
Hagan*, for appellant.

*Wells, Angell, Boynton & McMillan*, for appellees.

MOORE, J.   Litigation growing out of nearly the same facts as in this case was had in the case of *Haldeman* v. *Berry*, 74 Mich. 424.   A reference to that case will make it unnecessary to repeat all the facts appearing in the record in this case.   After that case was decided against Berry *et al.*, they brought this suit to recover the damages which they attempted to recover in that proceeding by way of recoupment.   The contract which was entered into by the parties was made, if made at all, by J. H. Mason acting for Berry *et al.*, and by Collins acting for Haldeman.   The facts necessary to an understanding of the case, in addition to those stated in *Haldeman* v. *Berry*, 74 Mich. 424, are: After Dean died, Collins appeared in Detroit, and presented a letter to Mason, reading as follows:

"LOUISVILLE, Feb. 13, 1882.

" J. H. MASON, Esq.

" *Dear Sir:* Mr. Lewis Collins is fully authorized to do business for me.   I have purchased from the administrator Mr. A. B. Dean's interest in the asphaltum business, and as his successor am prepared to fulfill all his contracts.

"W. N. HALDEMAN."

The presentation of this letter was followed by some talk, which resulted in the execution of the *memoranda* and letters found on pages 428, 429, and 430 of 74 Mich., which letters plaintiffs in this proceeding claim constituted a contract for the breach of which this action was brought. They recovered judgment, and defendant appeals.

In addition to the letters found in the opinion in the case of *Haldeman* v. *Berry*, *supra*, this record shows letters the substance of which is as follows:

*April 4, 1882*, Mason to Collins: " Looking anxiously for advices of shipment."

*April 6, 1882*, Collins to Mason: " Latest advices are that first shipment will no doubt be made before last of April."

*April 8, 1882*, Mason to Collins: " If no certainty of

getting it, must take immediate steps to get a supply from other sources."

*June 2, 1882,* Collins to Mason: " Cargo being delivered at the landings."

*June 10, 1882,* Mason to Collins: "Is it any more certain now than when you wrote a vessel was being loaded ?"

*February 2, 1883,* Collins wrote Mason that by retaining from the cargo delivered in December, 1882, the asphaltum loaned Dean, as well as by demanding 5 per cent. discount for cash, to both of which "I have and do now assent, you have confirmed the contract of February 14, '82, and it is confirmed and binding." Further, "Your favor of December 7th shows that your necessities have been supplied from another source, and you are practically without damage." Collins sent the draft of a new contract, stating, "It is not to be deemed a revocation or canceling of the one now existing, unless distinctly accepted."

*February 10, 1883,* Mason wrote Collins that he did not consider himself in any way bound by his former contract with Dean: "He failed to fulfill it, and, of course, I am not bound by it."

*February 12, 1883,* Collins wrote Mason, withdrawing his proposed contract of February 2d, and saying:

"I am free to say, and Mr. Haldeman is of the same opinion, that had you ignored the Dean and Haldeman contract wholly, and not have retained the amount of asphaltum loaned Dean, or five per cent. for cash, as agreed with Dean, the effect would have been to annul the contract. As it is, you have accepted so much and held us to so much as pleased you; and now we will exercise the same privilege. It will be some little time before a cargo can be tendered to you. You will be notified in advance, and we shall expect $38 and $40 per ton of 2,000 pounds, at 30 days, in payment. I am sorry we could not agree, as I prefer to do business amicably. But what can't be cured must be endured."

*February 12, 1883,* Collins telegraphed Mason: "Letter withdrawn. Will stand by old contract."

*February 15, 1883*, Mason wrote Collins that he need make no tender to be applied on any contract, as, under existing circumstances, he would not receive it.

*March 2, 1883*, Mason wrote Collins, offering to take 100 to 200 tons in July or August at prices stated, but not to apply on any contract orders theretofore given to him or Dean, "as all such orders or contracts are void."

*March 5, 1883*, Collins wrote Mason that he did not mean that, by his offer of a small cargo about July 1st, the obligation under which he thought Mason rested to take 1,130 tons should be of no further force.

*March 10, 1883*, Collins wrote Mason: "We had now best adjust our differences at law, and may the cause of justice win. I will be in Detroit next week to institute suit for breach of contract."

Collins visited Detroit in March, 1883, employed counsel, and commenced the suit against Berry Bros. in behalf of Haldeman. In that suit Berry Bros. claimed damages by way of recoupment, which case is the one reported in 74 Mich.

For the purpose of showing a ratification by Haldeman of the acts of Collins, the files in the case of *Haldeman* v. *Berry* were offered and received in evidence. It is the claim of Mr. Haldeman that he had no knowledge of the bringing of this suit by Collins until after a judgment in a large amount had been obtained against him; and that he prosecuted the appeal in the Supreme Court, not with a view of ratifying Collins' acts, but to protect himself against the judgment obtained against him, and that he did this by advice of counsel, and that it should not be treated as a ratification of Collins' acts. It is the claim of the plaintiffs that the written authority given Collins authorized him to do what he undertook to do, and that, if it did not, if Mr. Haldeman desired to repudiate his contracts, he should have acted promptly; and that, when Collins assumed to bring suit in the name of Haldeman, it was the duty of the latter to deny his authority to do so, and that, if he failed to do so,

his action was competent evidence for the jury to consider as bearing upon the question of ratification.

It is admitted by defendant that he wrote the letter of February 13th to J. H. Mason, but he insists that it did not confer any authority upon Collins to make any new contract with Mason; that it only authorized him to act in relation to the contract then existing between Dean and the Berrys; and that, as the authority conferred is in writing, it was the duty of the court to construe the contract, instead of leaving it to the jury to say, as the court did, whether the letter, taken in connection with all the circumstances and facts surrounding the case, authorized Collins to make the contract which he did make,— citing Mechem, Ag. § 104. The court left these two questions to the jury in the following language:

" When this letter was written, you will remember that Mr. Mason had entered into a contract for the delivery in Detroit of a certain quantity of asphaltum by Mr. Dean for Berry Bros. It was really the contract of Berry Bros. After his death this letter was sent by the defendant in this case to Mr. Mason. Now, whatever authority was conferred upon Mr. Collins by this letter, Mr. Haldeman is bound by, and by none other, unless you shall subsequently find that the contract—whatever was entered into by Mr. Collins—was subsequently ratified by Mr. Haldeman. When an authority is given to an agent by a principal, the principal is bound only so far as the agent shall keep within his contract, and, when that authority is in writing, a fair interpretation of what was intended by that writing is what governs; and I leave it in this case to you to say whether there was any authority intended to be given by Mr. Haldeman to Mr. Collins to execute or enter into any new contract, or simply whether it was authority merely to carry out the contract that had been entered into by Mr. Dean with Mr. Mason. If you shall find that under this letter there was no authority conferred upon Mr. Collins to enter into a new contract, but you shall find a new contract was entered into between Mr. Collins and Mr. Mason, then so far the plaintiffs in this case would not be entitled to recover, unless you found that authority was given by this writing to enter into this contract,—this new contract.

"It is claimed on the part of the plaintiffs that, even if there was no authority conferred upon Mr. Collins, he did enter into a new contract with the knowledge and approval of Mr. Haldeman, and as evidence of that proposition the exhibits that have been offered in evidence are permitted to go to you, so that you may determine whether, by the conduct or actions of Mr. Haldeman, he knew of or ratified in any manner this new contract that was entered into by Mr. Collins and by Mr. Mason. The evidence for you to consider in determining that proposition is this: It is claimed that this new contract by the plaintiffs was entered into by Mr. Collins, and that subsequently a suit was brought upon that contract to this court, in the name of the defendant, Mr. Haldeman, and that a judgment was entered against Mr. Haldeman in that case—he being the plaintiff—on the defendants' (Berry Bros.') plea of recoupment, for, I believe, something near $13,000. If Mr. Haldeman authorized the commencement of this suit in this court, then he recognized and ratified that contract. Here, on this proposition, so far these parties joined issue, the plaintiffs claiming that the evidence in this case shows that Mr. Haldeman authorized the commencement of that suit, Mr. Haldeman denying it, stating here that he never authorized Mr. Collins to commence this suit, nor never knew the suit was commenced, and knew nothing about the suit until he was informed subsequently that a judgment had been rendered against him in this court. It then follows, gentlemen of the jury, that this case was taken to the Supreme Court of this State, and there determined by a reversal of the judgment. It is admitted upon the part of the defendant in this suit, Mr. Haldeman, that he sent here from Louisville his counsel, who appears here in this case, and who was a witness upon this stand, and it is contended by the plaintiffs in this suit that all the testimony in this case, the brief and record, etc., showed that Mr. Haldeman then recognized this suit, and by that means ratified the contract which was entered into subsequent to the death of Mr. Dean between Mr. Mason and Mr. Collins. On the other hand, it is contended here that it is through the advice of counsel—that is, that counsel that Mr. Collins had hired in the suit in which Mr. Haldeman's name was used—that this case was taken to the Supreme Court, and that they were informed that that was the only way that Mr. Halde-

man could defend himself as against the judgment that had been rendered here in this suit of twelve or thirteen thousand dollars against him.   Now, right here, it is contended by counsel for the plaintiffs that that was not necessary to do in order to protect Mr. Haldeman ·at all, but that Mr. Haldeman could have moved in this court, on a motion to set aside that judgment by a bill in chancery, on the ground that his name was improperly used, that it was a fraudulent judgment as far as he was concerned, because he had nothing to do with it, and that that was his proper remedy.   Now, gentlemen, that remedy is sometimes resorted to, and it is a legal remedy; but I charge you that in determining that particular question in this case it is for you to determine the intention with which Mr. Haldeman acted, or the advice that he received, or what he acted upon, whether he intended to or did simply try to protect himself against this judgment, or whether he intended to or did ratify that new contract.   If you find that in taking this remedy he simply sought to protect himself against the judgment, and acted by the advice of counsel, and did not intend to nor did not recognize that new contract as his own, or the authority of Mr. Collins to make it for him, then there is no ratification of that new contract in this case.   But if he did recognize that new contract, or held Collins out,—that is, gave him authority in such a manner that people would be justified in believing that he was acting for him,—or he ratified this contract in the manner I have stated to you, then that ratification would be as binding upon him as if he had actually entered into the contract in the beginning."

It is undoubtedly the rule that a written contract is to be construed by the court.   It is another rule of law that, if the language of a contract is obscure or equivocal or ambiguous, it will be construed most strongly against the party using the language (*Kirwan* v. *Packing Co.*, 12 Ind. App. 1; *Falley* v. *Giles*, 29 Ind. 114; *National Bank* v. *Insurance Co.*, 95 U. S. 673; *Marr* v. *Given*, 23 Me. 55 [39 Am. Dec. 600] ); and that "where language is ambiguous, and the agent *bona fide* adopts a permissible construction, the principal cannot, on the ground

that such construction was not intended by him, disown and dishonor the act of his agent" (Whart. Ag. § 224; Mechem, Ag. § 304; *Hopwood* v. *Corbin*, 63 Iowa, 218; *Foster* v. *Rockwell*, 104 Mass. 167). The court might well have held that, under the proofs and circumstances of the case, Collins and the plaintiffs having acted under the permissible construction which could be put upon the letter, it must be held to confer authority upon Collins to act for Haldeman. The court did not think best to do this, however, and submitted the question to the jury. We do not think this was prejudicial error. See *White* v. *King*, 87 Mich. 107; *Carson* v. *Smith*, 5 Minn. 78 (77 Am. Dec. 539); *Kirwan* v. *Packing Co.*, *supra*. This disposes of all the questions relating to the authority of Collins to make the contract.

It is insisted by defendant that plaintiffs rescinded the contract, and that they also, by their acts and letters, waived any damages growing out of the failure of Haldeman to perform it. It is evident, from the correspondence and the action of Collins in bringing the suit of *Haldeman* v. *Berry*, that he did not regard the contract as rescinded. December 7, 1882, Mason wrote a letter, in which he stated that he had succeeded in finding a substitute for the asphaltum in English pitch, which suited him quite as well as the asphaltum; and it is insisted that this was a waiver. Mr. Berry gave his version of the circumstances under which the letter was written, and of the remittance for the asphaltum which was received. These were all questions of fact, and were properly submitted to the jury.

Judgment is affirmed.

The other Justices concurred.