## WADE *v.* DAY.

1. LOGS AND LOGGING—CONVEYANCES—RESERVATION OF TIMBER—LICENSES.

   Where a bill of sale of all of the timber on land was given to the grantor by the grantee at the time the land was conveyed, there was but a single transaction, and the timber was in reality reserved, and the bill of sale was something more than a mere license revocable by mere lapse of time, inaction by the grantor, or by deed of the grantee.[1]

2. HUSBAND AND WIFE — RESERVATION OF TIMBER — SIGNATURE OF WIFE.

   Where land was conveyed to husband and wife, and in the same transaction the grantor took back a bill of sale of the timber on the land, it being in reality reserved, the writing conveying the timber did not require the signature of the wife.[2]

3. LOGS AND LOGGING—INTENT GOVERNS SALE OF STANDING TIMBER—LICENSES.

   In a sale of standing timber, the intention of the parties largely determines whether there is a license, or a grant attaching to realty.[3]

4. SAME—WHEN SALE OF TIMBER PERSONALTY OR RIGHT IN REALTY.

   If the contract for the sale of standing timber is made in contemplation of the timber being cut immediately, or the then condition of the timber is what is sold, and a reasonable time for the removal is agreed upon or implied, then the deal relates to personalty, but when the immediate severance of the timber is not contemplated, and the right to let it grow until the land is wanted for

[1]Logs and Logging, 38 C. J. § 72; [2]Husband and Wife, 30 C. J. § 108; [3]Logs and Logging, 38 C. J. § 32.

As to whether timber sold or reserved without specifying time be removed within reasonable time, see note in 46 L. R. A. (N. S.) 672.

(458)

agricultural purposes and notice to remove is given, the conveyance deals with rights in realty.[4]

5. SAME—CONVEYANCE OF TIMBER NOT MERE LICENSE.
    The wording in a conveyance of standing timber, *held,* to import an absolute vesting of title in the grantee, and to negative a conditional sale or mere license.[5]

6. SAME—INTENTION OF PARTIES SHOWN BY CONTRACT.
    A conveyance of standing timber, with power in the vendor to require its removal, on notice of one winter's time, from land wanted for clearing, shows the intention of the parties to allow the timber to remain and grow until such notice, and not to require its removal within a reasonable time without notice.[6]

7. SAME—EQUITY—INJUNCTION.
    Where, in a suit to enjoin the removal of timber from land, it appears that plaintiff purchased the land with full knowledge that his grantor had conveyed the timber and that he had covenanted to defend its sale against all, and that plaintiff paid only what the land was worth without the timber, there are no outstanding or appealing equities in his favor as against the purchaser of the timber, because in the meantime the young timber has grown and become valuable.[7]
    BIRD, J., dissenting.

Appeal from Leelanau; Gilbert (Parm C.), J.     Submitted January 13, 1925.     (Docket No. 76.)     Decided October 13, 1925.

Bill by John A. Wade against David H. Day to enjoin the removal of timber from land.     From a decree for plaintiff, defendant appeals.     Reversed, and bill dismissed.

*Patchin & Duncan,* for plaintiff.

*J. J. Tweddle,* for defendant.

WIEST, J.     June 8, 1907, defendant was the owner of 80 acres of land in Leelanau county, upon which

---

[4]Logs and Logging, 38 C. J. § 28; [5]Id., 38 C. J. § 72; [6]Id., 38 C. J. § 49; [7]Id., 38 C. J. § 70.

he had conducted logging operations in connection with timber on other tracts. That day he conveyed the land to James and Ellen Karns, by warranty deed, taking back a so-called bill of sale of the timber thereon, executed under seal by James Karns and witnessed by Ellen Karns and another. This conveyance was recorded in the miscellaneous records of Leelanau county and recited that James Karns:

\* \* \* "has bargained and sold, and by these presents does grant and convey," to David H. Day, "his executors, administrators or assigns, all the following goods and chattels, to wit: All of the timber standing, lying or being on," the lands that day conveyed by Day to Karns, "with privilege to enter upon said lands at any time to remove the same, also the use of the camps now on said lands. And it is further agreed that should said party of the first part (Karns) desire to clear up any of said land upon proper notice to party of second part (Day) giving one winter's time to do same, he (Day) will remove timber from such lands, but only as land is actually wanted for clearing, belonging to me, (Karns) and now in my possession at Empire township. To have and to hold, the same unto said party of the second part, his executors, administrators and assigns, forever. And the said party of the first part, for his heirs, executors and administrators does covenant and agree to and with the said party of the second part, his executors, administrators and assigns, to warrant and defend the sale hereby made of said property, goods and chattels hereby made, unto the said party of the second part, his executors, administrators and assigns, against all and every person or persons whatsoever."

Mr. Karns took possession of the land, using the 80 acres for pasture, never gave notice of desire to clear up any portion thereof, and at all times treated the sale of the timber in force, until January 21, 1924, when he and his wife deeded the premises to John A. Wade, plaintiff herein, for $1,000, by quitclaim deed, without mention of the timber rights of defendant. Plaintiff, at the time of his purchase, knew of the

timber sale by Karns to defendant, and had in his possession a certified copy of the record thereof from the office of the register of deeds.    This bill was filed to enjoin defendant from removing the timber on the land, and, upon hearing, a decree was granted, finding defendant had only a reasonable time in which to remove the timber, that such time had elapsed, and the right to remove was lost, and the so-called sale was but a license, revoked by deed of the premises to plaintiff.    We think the so-called bill of sale was something more than a mere license, and was not revocable by mere lapse of time, inaction by Mr. Day, or by deed by Mr. and Mrs. Karns to plaintiff.

The evidence shows that the deed to Karns and wife, and the bill of sale of the timber, constituted a single transaction, and the timber was in reality reserved and reduced the purchase price of the land. This being so, the conveyance did not require the signature of Mrs. Karns.    We think the writing a conveyance of the timber, rather than a mere license to remove it.    While overtechnical niceties will not be indulged, in considering conveyances of standing timber, when prepared by laymen, we may not close our eyes to apt terms employed to express the intention of the parties.    We find terms employed, consistent with a conveyance of realty, and beyond the terms of a mere license.    This conveyance fastened rights to the realty to the extent of carrying out its provisions.    It will be found, upon an examination of cases of sales of standing timber, that the intention of the parties largely determines the question of whether there is a license, or a grant attaching to the realty.    If the contract is made in contemplation of the timber being cut immediately, or the then condition of the timber is what is sold, and a reasonable time for the removal is agreed upon or implied under the circumstances, then the deal relates to personalty.

But when the immediate severance of the timber from the land is not contemplated, and right to let it grow remains until the land is wanted for agricultural purposes and notice to remove is given, the conveyance deals with rights in realty.    Every word in this conveyance imports an absolute vesting of title to the timber in defendant and negatives a conditional sale or mere license.    The sole condition in the conveyance relates to the duty to remove the timber upon notice, and this shows the right to let the same remain and grow until the land was wanted for agricultural purposes.    The parties to the conveyance contemplated timber growth and the advantage thereof to defendant.    Live young trees are quite apt to grow bigger, and the actual growth made from year to year by the timber on this land was apparent to any one interested.    It is said it would be in-, equitable to permit the trees to occupy the land for 17 years and then with their accumulated growth be removed.    A sufficient answer to this is found in the conveyance in the provision for removal upon notice, "in one winter's time."    It was within the power of the owner of the land to end the timber occupation thereof, and there cannot be substituted therefor the rule requiring removal within a reasonable time.    If the owner of the land did not care to avail himself of the means provided in the instrument for securing the removal of the timber, and free his land from the imposed burden, time alone will not work the result for him, and he may not invoke the rule requiring removal within a reasonable time.    Such rule cannot be invoked when the conveyance carries its own yardstick on the subject.    The owner could not wait until the timber had acquired 17 years' growth and then be heard to say it is inequitable to hold the conveyance still in force, for this ignores the remedy, at the landowner's command throughout all the inter-

vening years, to prevent the very inequity now asserted.

When was there to be severance of the timber from the land? Upon notice, "with one winter's time thereafter." What was to be severed? This is answered by the stipulation in the conveyance that the land should be actually wanted for clearing. If the owner wanted to clear the land, then he certainly did not expect to have all young trees left thereon. Time for removal of the timber was specified in the conveyance, by the provision for removal upon notice, and then only covering the land actually wanted for clearing. This manifests an intention to let the timber remain, at the option of the purchaser, until the notice provided for was given, and forbids the finding of an intention to have removal made within a reasonable time without notice. We have examined the decisions relative to timber sales, find no case with a conveyance just like this one, have discovered the futility of trying to fit one timber sale decision to another set of facts, and find we can do no more than apply general and well-established principles of law to the case at bar. We cite a decision we have found helpful.

In *Hicks* v. *Phillips*, 146 Ky. 305 (142 S. W. 394, 47 L. R. A. [N. S.] 878), there was a reservation in a deed of the timber "on the left-hand side of the road leading from Monticello, Kentucky, to the Francis line, at present owned by William Thornton, also all the rails made, and cut timber for rails or other purposes, lying on said land."

A bill was filed to restrain entry to remove the timber; it was claimed that:

*   *   *   "no time being fixed in the reservation for removing the timber, it should in law, equity and good conscience have been removed in a reasonable time; that more than 37 years had elapsed since the timber was reserved, during which time appellees had suffered

their claim to lie dormant and unasserted up until about four years before the filing of the petition; that such length of time was unreasonable; that having failed to cut and remove the timber within a reasonable time, their claim was stale, and they should not now be permitted to do so."

In holding there was no loss of timber rights the court reviewed cases on the subject, including two from this State (*Martin* v. *Cook*, 102 Mich. 267; *Wait* v. *Baldwin*, 60 Mich. 622 [1 Am. St. Rep. 551]), pointed out the distinction between a license to remove timber and a conveyance of timber in the nature of realty, stated the limitations of the rule requiring removal within a reasonable time, and answered some other claims advanced in the suit at bar.

We quote the following from the opinion:

"On the whole we think the correct rule is laid down in *Patterson* v. *Graham*, 164 Pa. 234 (30 Atl. 247), where it was held that one may buy growing timber with no intention of manufacturing it, and may hold it just as he might buy and hold the land, if he so frame his contract; but that where the parties intend that the timber shall be severed from the land, and no time is fixed therefor, the law implies that the grantee will remove it within a reasonable time. So, too, the vendor of land may wish to reserve the timber thereon, not with a view of cutting it and removing it, but with a view of its ultimate enhancement in value when proper transportation facilities afford him a market. If so, he should be permitted to contract accordingly. But it is insisted that this will impose a heavy burden on the vendee of the land by defeating for an indefinite period of time the culture and improvement of the soil. If so, it will be a burden that he knowingly and voluntarily assumes."

If the timber is now worth the estimate placed on it by Mr. Karns, then plaintiff, in buying the land, paid nothing for the timber thereon. Plaintiff paid $1,000 for the 80 acres of land, worth, according to Mr. Karns, that amount without the timber, and worth,

with the timber, $8,000. Of course, this is not decisive of legal rights, but it does puncture the claim of great inequity featured by plaintiff if defendant is not barred from taking the timber. Under the circumstances we do not notice any outstanding or appealing equities in behalf of plaintiff. Plaintiff purchased with full knowledge of the conveyance, and, under quitclaim deed from Karns and wife, acquired no greater rights than they had to give. He knew that Karns had covenanted with defendant to defend the sale "against all and every person or persons whatsoever."

Mr. Karns had it within his power to require the removal of the timber at any, time upon giving the notice specified in the conveyance. This he did not give, but let the matter run along without questioning the defendant's rights, and his testimony shows he respected such rights up to the time of sale to plaintiff. Plaintiff evidently calculated he could defeat defendant's claim of ownership of the standing timber, and, if successful, could profit to the extent of about $7,000. Plaintiff is versed in real estate deals, and values, and timber estimates, and bought with his eyes open, and if he has overlooked rights he is bound to respect he has no one to blame but himself. We, are of the opinion that the learned circuit judge was in error in his holdings.

The decree in the circuit is reversed and one will be entered here dismissing the bill, with costs against plaintiff.

CLARK, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred with WIEST, J. McDONALD, C. J., did not sit.

BIRD, J. (*dissenting*). The trial court was of the opinion that this case was ruled by *Curran* v. *Gordon,* 169 Mich. 250. Being of the same opinion I hereby

present my views in support of it.    In *Curran* v. *Gordon,* Sarah E. Backus was the owner of the fee. In this case James Karns, plaintiff's grantor, was the owner of the fee.    In the *Curran Case,* Sarah E. Backus gave Curran a bill of sale of certain standing timber.    In this case, Karns gave defendant a bill of sale of certain standing timber.    Both relied upon the bill of sale.    In the *Curran Case* the owner of the bill of sale had possession of the land.    In the present case the owner of the bill of sale was not in possession of the land.    In the *Curran Case,* the death of Sarah E. Backus revoked the license to take the timber.    *Estelle* v. *Peacock,* 48 Mich. 469.    Her heirs also revoked the license.    In this case the transfer of the fee to plaintiff revoked the license. *White* v. *King,* 87 Mich. 111.    The plaintiff also revoked the license.    In the *Curran Case,* we held the bill of sale conveyed no interest in the real estate but did convey a future chattel.    In this case, the bill of sale to defendant conveyed no interest in the real estate, but did convey a future chattel when the timber was severed.

When the defendant Day sold the land to James Karns, plaintiff's vendor, he gave him a warranty deed of the premises.    By this deed all the interest he had in the premises passed out of him.    On the same day Karns gave defendant a bill of sale of the standing timber.    This conveyance carried no interest in the standing timber, but did convey a future chattel and a license to carry it away when it was severed. *Greeley* v. *Stilson,* 27 Mich. 158.    Before it was severed and became a chattel plaintiff revoked the license.    This left defendant without any interest in the standing timber.

It was said in *White* v. *King, supra,* that:

"It is true that the absolute title to standing timber in this State will not pass except by deed, in the same

manner as the fee of the land; but a license to enter and cut such timber, and remove the same, can be given, which, unless revoked before the timber is cut, and thereby converted into personalty, will pass the title to so much as has been severed from the soil. *Greeley* v. *Stilson,* 27 Mich. 157; *Haskell* v. *Ayres,* 35 Mich. 90; *Wetmore* v. *Neuberger,* 44 Mich. 362; *Spalding* v. *Archibald,* 52 Mich. 365 (50 Am. Rep. 253). A sale of the land would revoke the license, but in this case the defendant had only a bill of sale of the timber which was no more than a license."

In *Morrill* v. *Mackman,* 24 Mich. 279 (9 Am. Rep. 124), a license was defined

"as a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it.   *   *   *   It is founded on personal confidence, and therefore not assignable.   *   *   * It may be given in writing or by parol; it may be with or without consideration; but in either case it is subject to revocation."   *   *   *

Mr. Justice WIEST attempts to break the force of this rule of law by a consideration of the equities of the present case and he cites *Hicks* v. *Phillips,* 146 Ky. 305 (142 S. W. 394, 47 L. R. A. [N. S.] 878). In my opinion that case has no application to this one because the right claimed was based upon a reservation and not on a bill of sale.   In the Kentucky case when the conveyance was made all of the estate did not pass out of the grantor, but a reservation was made of the standing timber.   This indicated an intention to reserve an interest in the real estate.   Here all of the estate passed out of the grantor and he relied on a bill of sale which did not attempt to transfer any interest in the land.   This rule of law should not be abrogated because this defendant appears to have some equities.

The decree of the trial court should be affirmed.