| 64 | 339 |
| 73 | 304 |

| 64 | 339 |
| e88 | 151 |

## BATES *v.* DUNCAN.

### Opinion delivered October 16, 1897.

LICENSE—ASSIGNMENT.—Where the owners of land, being engaged in erecting a building thereon, enter into a verbal agreement with a Masonic lodge that the lodge shall add a second story to the building, which it shall have the right to use and occupy, it being understood, though not expressly provided, that it should be used as a lodge room, and afterwards the owners execute an instrument guarantying to the lodge the exclusive right to use and occupy such second story, together with the right of ingress and egress at such times as said lodge or its representatives may designate, the agreement conveys only a personal right to the lodge, and is not assignable. (Page 342.)

SAME—DETERMINATION.—A license to enter upon and use the building of another is extinguished by an attempt on the part of the licensee to transfer it to a third person. (Page 344.)

SALE OF LICENSE—ESTOPPEL OF LICENSOR.—Evidence that a licensor made no objection to a sale of the license by his licensee will not be sufficient to support a finding that he was estopped to question the validity of the transfer, where it is not shown that he had notice of the sale before it was consummated, or that his failure to object misled or affected the action of the purchaser. (Page 344.)

Appeal from Scott Circuit Court.

EDGAR E. BRYANT, Judge.

### STATEMENT BY THE COURT.

Action by appellants to recover of appellees the possession of the second story of a school building.

In the year 1884, the appellants, T. G. Bates and certain other persons, raised a fund of money with which they purchased lots in the town of Waldron, and erected thereon a school house. The title to these lots was conveyed to the appellants, T. G. Bates *et al.*, as trustees for the subscribers of the fund with which the lots were purchased. After the school house was built, the trustees allowed school district No. 15 of Scott county, which at that time included the town of Waldron, to use the house for school purposes, free of rent. Afterwards, the school district of Waldron was carved out of the territory

of school district No. 15, and the lots upon which the school
house stood were included within the limits of the new school
district, after which time the first story of the house was used
by the Waldron district. The case was submitted to the circuit
judge without a jury, who made findings of facts and law.
The only controversy here relates to the second story of the
school house, concerning which the circuit judge found as fol-
lows: That the trustees proceeded to erect a school house on
the land conveyed to them. That, "by an arrangement entered
into between the trustees and the Masonic Lodge of Waldron,
said lodge agreed to furnish the money and build a second
story to said building, the floor for same, and one-half the
roof, the said lodge to have, use, and occupy the second
story. It was understood that it was going to use the same
as a lodge room, though no limitation of its use to that pur-
pose, or of the right of the lodge to rent or sell the same,
was entered into. The lodge under said agreement complied
with the contract, built said second story at a cost to it of
between $600 and $700, and went into and used the same
as a lodge room until some time in 1888. That the trustees
for the subscribers aforesaid executed and delivered to said lodge
the following instrument of writing, duly acknowledged and
recorded, to-wit: "Know all men by these presents, that we,
A. A. Sanford, T. G. Bates, John Rawlings, S. K. Duncan, Fred
Malen, and J. K. Bell, trustees, recognizing the right of Waldron
Lodge No. 132 to the upper part of the Waldron Academy,
which main building is 28 by 60 feet, and is situated on the
following described real estate, to-wit, * * * do hereby
guaranty to said Waldron Lodge No. 132 the exclusive right to
use and occupy said room, together with the right of ingress
and egress at any and all such times as said lodge or its repre-
sentatives may designate. Given under our hands this 29th
day of December." This writing was duly signed and acknowl-
edged, and afterwards was recorded.

The circuit judge further found "that in 1888 the lodge
by oral contract sold and delivered to school district No. 15 all
its right, title, and interest in said second story of said build-
ing at and for the purchase price of $400, which was paid to
the lodge out of the funds of said district No. 15."

At the commencement of this action, the defendant G. W. Duncan was in possession of said second story as teacher for school district No. 15. The circuit judge also found "that no objection was raised by the trustees, or the subscribers aforesaid, or anyone else, to the purchase from the Masonic lodge and the use and occupation of the second story by school district No. 15."

Upon the whole case the presiding judge declared the law in favor of school district No. 15, so far as the possession of the said second story of the building was concerned, and gave judgment accordingly.

*Miles & Miles* and *S. R. Cockrill,* for appellants.

The grant to the lodge was void, because the trustees had no authority to grant a use of the property for other than school purposes, and also because there was no consent of a majority of the subscribers to same. 16 Barb. 107; Sand. & H. Dig., § 3469. The right of the lodge was a personal license, and could not be delegated or assigned. 4 Johns. 418; 1 Wash. R. Prop. star page 400, § 10a; 6 N. H. 9; 51 N. H. 485; 10 Conn. 378; 3 Duer, 255; 1 Wash. R. Prop. star page 399, § 9; 55 Pa. St. 164. The trustees are not estopped. 53 Ark. 358. The school district of Waldron succeeded to the right of school district No. 15 to any property within the limits of the new district. 56 Ark. 148; 33 Ark. 497; 52 Ark. 430; 100 U. S. 514; 92 U. S. 307, 314; 60 Ark. 124.

*A. G. Leming* and *Daniel Hon,* for appellee.

The presumption is in favor of the trustees having power to do what they did do. 31 Ark. 609; 25 Ark. 311; 33 Ark. 465; 2 Wash. R. Prop. (4 Ed.) star page 446; 46 Ark. 17; 39 N. J. L. 321. They did not so exceed their powers as to work a forfeiture of their right. 43 N. H. 475; 48 N. H. 385; 2 Wash. R. Prop. (4 Ed.) pp. 446, 447; *id.* p. 450; *id.* p. 451; *id.* p. 478; *id.* p. 319; 10 Am. & Eng. Enc. Law, 1044. The lodge had power to convey its right. 53 Ark. 327; 54 Ark. 233; 1 Root (Conn.), 318; 8 M. & W. 488; 14 S. & R. (Pa.) 267; 35 Ark. 541; 19 Ark. 23. 1 Wash. R. P. (4 Ed.) p. 639, star pp. 402–403; 3 Kent's Com. 452; 69 Ga. 114; 10 Phil. (Pa.) 113; 59 Pa. St. 23; 15 Ohio, 248; 52 Ind. 334.

60 Vt. 702; 2 Disney (Ohio), 100; 33 Mo. App. 180; 19 Mo. App. 170; 57 Mo. 265; 45 Ga. 331; 19 Ind. 367. Property of old district, within the bounds of new one, does not vest in the latter on its organization. 33 Ark. 497; 21 Am. & Eng. Enc. Law, 847; 18 Mo. App. 266; 86 Ill. 613; 46 O. St. 595; 93 Cal. 414; 27 Ark. 398; 3 N. H. 521; 45 Me. 133; 47 Me. 127; 4 Mass. 384; 16 Mass. 76–86; 53 N. H. 515; 52 *id.* 225; 2 *id.* 20; 45 *id.* 87; 7 Mass. 445; 45 Mich. 257; 12 Wis. 103; 31 Wis. 120; Dillon, Mun. Corp. (4 Ed.) § 185; *id.* § 188, page 270.

RIDDICK, J., (after stating the facts.) This action was commenced by the appellants, T. G. Bates *et al.*, trustees, to recover the possession of the second story of a school house situated in the town of Waldron. That portion of the building was in the possession of G. W. Duncan, who held it as teacher, employed by school district No. 15 of Scott county. He and said school district are the defendants in the action, but the school district is the real party in interest, and claims the right to the possession and control of the second story of the building by virtue of a purchase from the Masonic Lodge of Waldron. There are several interesting questions discussed by counsel in this case, but we will first consider and determine the nature and extent of the interest held by the Masonic Lodge of Waldron in the property in controversy.

The evidence in the case is not before us, except as the facts are stated in the findings of the circuit judge. On this point he found that, "by an arrangement and agreement entered into between the lodge and the appellant trustees, the the lodge agreed to furnish the money and build a second story to said building, the floor for the same and one-half the roof, the said lodge to have, use, and occupy the said second story. It was understood that it was going to use the same as a lodge room, though no limitation of its use to that purpose or of the right of the lodge to rent or sell the same, was entered into." We understand from this finding that the lodge paid nothing for the lots, and took no interest in them, but was permitted to build a second story upon the school building owned by the trustees, and to "have, use, and occupy the same."

Although there was no express limitation upon the power of

the lodge to sell, still we are of the opinion that, under the facts found by the court, the law itself affixed a limitation. In other words, we are of the opinion that the authority granted to the lodge to erect and to "have, use, and occupy" the second story was a personal right conferred upon the lodge, and not assignable. We are confirmed in this view by the instrument of writing which was afterwards executed by the trustees, and delivered by them to the lodge. This instrument, which is set out in the statement of facts, guaranties to said lodge "the exclusive right to use and occupy said room, together with the right of ingress and egress at any and all such times as said lodge or its representatives may designate." The parol agreement did not convey any title to the lodge, and this written instrument does not pretend to convey any, but only grants the right to use and occupy. There is in it no mention of assignees, successors, or use of other words evincing an intent to extend the right to others beyond the members of the lodge or to give the lodge authority to assign their interest in the building. On the contrary, the understanding was that the lodge wanted it for a lodge room, and the grant of the right to use and occupy is to the lodge and its representatives, thus showing that the grant was a personal privilege to the lodge. Both the lodge and the school district seem to have recognized the fact that the lodge had no title or interest in the land, beyond the mere license to use and occupy this second story. The lodge took no conveyance from the trustees, but, in erecting this second story, acted upon a parol agreement, and afterwards accepted a writing, which conveyed no title, but only gave the right to use and occupy. When the lodge sold to the school district, although it was a cash transaction, no deed or writing, such as is common in conveyances of land, was given, but the transfer was made by a parol agreement; thus evincing a tacit understanding that possession was all the lodge had to convey, and that it owned no interest in the land requiring a written conveyance.

These facts strengthen the conviction that the extent of the interest of the lodge in this property was only a license to use and occupy. But a license granted by the owner of land for another to erect a building thereon, with right to use and occupy it, and with privilege of ingress and egress, conveys

only a personal right to the grantee, and is not assignable. *Jackson* v. *Babcock,* 4 Johns. 418; *Harris* v. *Gillingham,* 6 N. H. 9; *Prince* v. *Case,* 10 Conn. 375; *Jamieson* v. *Milleman,* 3 Duer, 255; *Dark* v. *Johnston,* 55 Pa. St. 164; *Pearson* v. *Hartman,* 100 *ib.* 84; Washburn, Easements & Servitude (4 Ed.), 17ᵗʰ

"A man," says Judge Strong, in *Dark* v. *Johnston, supra,* "may well accord a privilege upon his lands to one person which he would refuse to all others. Hence it is held that a personal license is not assignable, and that an assignment by a licensee determines his right. * * * He may abandon or release. He cannot substitute another to his right." And in that case, although the licensee had expended money and made such valuable improvements upon the faith of his license that the court was of the opinion that the license as to him had become irrevocable, *still* it held that his rights were terminated by the sale, and that such sale conferred no rights in the property to his grantees.

We can conceive of many reasons why the trustees of this property might be willing to extend this privilege to the lodge, and not to other persons, but it is unnecessary to discuss that question further.

Having, after some hesitation, concluded from the language of the written instrument delivered by the trustees to the lodge, and from the other facts stated in the findings of the court, that this was a personal privilege conferred upon the lodge, and not assignable, it follows that school district No. 15 took nothing by the purchase from the lodge, and that the rights of the lodge were terminated by such attempted sale.

It is true that the appellant trustees could have assented to such sale, and could have extended the license to occupy the second story to school district No. 15; but the findings of the court do not show these facts. It is stated in the findings of the court "that no objection was raised by the trustees or subscribers aforesaid, or any one else, to the purchase from the Masonic lodge." But this does not show that the trustees assented to the sale, nor is it sufficient to estop the trustees from asserting their rights against the district. It is not shown that the trustees had notice of the purchase before it was consummated, or

that their failure to object misled or affected in any way the action of the school district.

The findings show that two of the appellant trustees were in 1886 trustees also of school district No. 15, but it is not shown that they were such in 1888 at the time of this purchase from the Masonic lodge. As these trustees were residents within school district No. 15 at the time of this purchase, we may suspect that they had notice of it, and assented to it; but the court cannot base its judgment upon mere suspicion.

Our conclusion that the lodge had no assignable interest in the property, and that such interest as it had was terminated by its attempted sale thereof, makes it unnecessary to discuss the question as to whether an unincorporated lodge, as such, could take title to land, or, indeed, to notice any of the other points raised. For the reasons given, the judgment of the circuit court is reversed, and the cause remanded, with an order that judgment for the possession of said second story be entered in favor of the appellants, T. G. Bates *et al.*, as trustees. But so much of the judgment as denied relief to the school district of Waldron is affirmed.