BELSER *v.* MOORE.

Opinion delivered December 10, 1904.

1. EASEMENT—HOW ACQUIRED.—An easement is such an interest in land as comes within the statute of frauds, and can be acquired only by grant, express or implied, or by prescription, which presupposes a grant.   (Page 302.)

2. SAME—RIGHT TO KEEP DOORS OPEN.—The facts that the plans for erecting a building on four contiguous lots for their respective owners, the ground floor of which was to be used in part for a saloon and for the rotunda of a hotel, contemplated that two doors, capable of being closed and locked, should be placed between the hotel rotunda and the saloon, and that it was convenient for the purposes of the saloon that such doors should be kept open, raises no implied contract that they should be kept open. (Page 302.)

3. SAME—LICENSE TO KEEP DOORS OPEN.—Where the right to use the doors between a hotel rotunda and an adjacent saloon is permissive merely, amounting merely to an implied license that they might be used as a passway from the one room to the other, the use thereof was not adverse, and not a use from which an easement might be acquired by prescription.   (Page 303.)

Appeal from Ouachita Circuit Court in Chancery.

CHARLES W. SMITH, Judge.

Reversed.

STATEMENT BY THE COURT.

John H. Morgan, Charles D. Gee and T. J. Moore being each the owner of a certain lot in the city of Camden, and being also the owners as tenants in common of a certain other lot, and being desirous of erecting upon said property a brick building, they entered into a contract, the parts of which that are material here being as follows:

"This indenture, made and entered into on the 29th day of April, A. D. 1889, by and between John H. Morgan, Charles D. Gee and T. J. Moore, witnesseth: That whereas said parties are the owners of a tract or lot of land fronting 100 feet on Washington street in block 7, and west of Adams street, in the

city of Camden, Ark., and whereas they wish to erect a solid brick block on said lot of land three stories high. And whereas the said John H. Morgan is the owner in his individual right of twenty-four feet of said lot fronting on Washington street, and running back to Tyler alley, and bounded on the east by Adams street. And the said C. D. Gee is the owner in his individual right of twenty-four feet of ground fronting on Washington street, and running back to Tyler alley, and bounded on the east by the strip belonging to J. H. Morgan described above, and the said T. J. Moore is the owner of twenty-four feet of said lot of land fronting on Washington street, and running back to Tyler alley the width of its front, and bounded on the west by three feet of ground between his said lot and the one now owned by W. K. Ramsey in his individual right, and said parties are the owners jointly and in common of twenty-five feet of said lot of ground fronting on Washington street, and running back the width of its front to Tyler alley, and bounded on the east by the lot of Charles D. Gee, above described, and on the west by the lot of T. J. Moore, above described, and also of three feet of ground fronting on Washington street, and running back the width of its front to Tyler alley, and bounded on the east by the lot of T. J. Moore, above described, and on the west by the lot now owned by W. K. Ramsey.

"It is agreed between the parties hereto that, as soon as practicable, they will erect said three-story brick building on said ground owned as aforesaid jointly and individually by them. * * * Each, reserving to himself the ground floor or first story of his individual property aforesaid, doth, uniting with the other two, hereby devote the property owned by them jointly as aforesaid, as well as the second and third stories and roofing of said building, to the purpose of the hotel aforesaid, each paying one-third the expenses of erecting said building. The said hotel and the business pertaining thereto shall be owned and controlled by them jointly, they sharing equally the profits and losses of said hotel, hotel proper and hotel business. It is further agreed, by and between the parties hereto, that neither any one or two of them shall dispose of, rent or lease his or their individual property or interest in the common property without first giving preference as purchasers, renters, or leasors [lessees] to the other two or one, as the case may be. This agreement and contract

shall be and remain in force until annulled by the consent of all parties hereto or by a court of competent jurisdiction, and for the latter purpose this may be considered as a partnership.

"Witness our hands this 29th day of April, A. D. 1889.

"J. H. MORGAN (Seal),
"T. J. MOORE (Seal),
"C. D. GEE (Seal)."

In pursuance of this contract they had plans for a building prepared by an architect, and by these plans the rotunda of the hotel was located on the lot owned by the parties jointly, and was between the room owned by Moore and reserved by him to be used as a saloon and the room owned by Gee. There were shown on the plans five different entrances to the saloon room owned by Moore. The main entrance to this room was from the street on which the building fronted; another entrance was from an alley in the rear of the saloon, and one also from the side. In addition to these entrances, there were two other doors, which provided means of ingress and egress direct from the saloon to the rotunda of the hotel.

After the building was erected, these doors between the saloon and the hotel rotunda were kept open, except during Sundays, and after midnight, and during hours when the saloon was not open for business. But in August, 1891, Morgan, Moore and Gee, the owners of the hotel, by written contract leased it to L. A. Belser for a period of five years from the 1st of September, 1901, for a monthly rental of $125 per month. The contract specifies among other matters that, for and in consideration of that sum, they "hereby lease, let and grant to the said L. H. Belser, party of the second part, all the Hotel Ouachita building, situated on the north side of Washington street, in the city of Camden, Ark., except the following portions of said building, towit: The ground floor of said building, now occupied by Berg Brothers, also the ground floor occupied by Will Belzner, also the corner store occupied by A. L. Morgan & Co.," for a period of five years.

Belser took charge of the hotel under this lease, and after he had operated it for some months he closed the doors leading from the hotel rotunda to the saloon. Thereupon T. J. Moore,

the owner of the room in which the saloon was kept, and his tenant, Will Belzner, who kept the saloon, brought this action in equity to restrain and enjoin him from keeping those doors closed. The defendant, L. H. Belser, appeared, and filed an answer, in which he set up his contract of lease, and denied the right of Moore, or his tenant, Belzner, to keep open the doors. He further alleged that one of the entrances referred to opened into that part of the hotel where the baggage of his guests was kept, and that he could not protect said property if the doors were under the control of another and open to everyone. As a further reason why said doors should be closed, he alleged that they afforded a means of entrance into the saloon on Sunday, through which people continually passed on that day to obtain liquor, so that said doors and the traffic they encouraged were a nuisance to the defendant.

On the hearing of the case, Will Belzner, the owner of the saloon, testified that he had occupied it for eight or nine years; that he rented the room in which the saloon was kept from Mr. Moore, the owner thereof, and paid him $75 a month as rent. He had no written lease; but it was agreed that he would continue to rent it so long as license for the sale of liquor could be obtained; but if license was voted out, his lease would terminate. He further testified that if the doors in question were closed it would reduce the rental value of the room for a saloon about $25 per month, and that, in agreeing to pay $75 a month as rent for the room, he was influenced by the increase of trade arising from the use of these doors to the rotunda of the hotel.

Belser, the defendant, testified that he closed the doors because they occupied space in the rotunda of the hotel that was valuable to him, and which he wished to use as a place for a desk and counter. Continuing further, he said: "The back door running from the hotel rotunda to the saloon opened into my baggage room where people were passing in, to and fro, day and night, as well as Sunday, which would have perhaps caused me loss of baggage, and did cause me a great deal of annoyance by persons who were not guests of the hotel. Another reason was because, people becoming intoxicated in the saloon, no chairs in there to accommodate them, they would come into my office

day and night, made themselves nuisances by cursing and vomiting, and even urinating in my office. Therefore I couldn't have a lady come through the office, or my wife could not even be in there to assist me in conducting the office, as she has always done ever since we have run a hotel."

The court rendered a decree in favor of plaintiffs, enjoining defendant from closing the doors from the saloon to the front part of the rotunda near the street, but denied relief as to the door opening into the back part of the rotunda, where the baggage of the guests of the hotel was kept.

*Thornton & Thornton,* for appellant.

Appellant had the right to so place his cigar stand as to close the door, and appellees had no remedy in equity.    1 S. W. 468.

*T. W. Hardy* and *Smead & Powell,* for appellees.

Appellees were entitled to an easement in the party wall. 19 Ark. 23; Washb. Easm. 2; Jones, Easm. 3; 10 Am. & Eng. Enc. Law (2d Ed.), 398. This easement was created in writing, and entitled appellees to ingress and egress through the doors opening into the hotel. Jones, Easm. § 641; Goddard, Easm. 11; Gale, Easm. 11; 5 Taunt. 311. The easement was appurtenant, continuous and apparent.   10 Am. & Eng. Enc. Law (2d Ed.), 403-5; 18 N. J. Eq. 262; Jones, Easm. 15, 119. Appellant, having notice of same at the time of his lease, took subject thereto. Jones, Easm. 94-5; 110 Ind. 117; 116 Ill. 111, s. c. 50 Am. Rep. 758; 25 N. J. L. 70; 46 Oh. St. 528; Jones, Easm. § 694; 75 Ill. 118. The easement may be acquired by adverse possession of lands for statutory period.   Jones, Easm. § 160; Washb. Easm. § 4; 7 Wheat. 59; Sand. & H. Dig. § 4820. Equity will interfere to protect easements and enforce their enjoyment where there is no adequate remedy at law.    Washb. Easm. 748; 3 L. R. A. 861; 26 N. Y. 105; 2 Story, Eq. 927.

RIDDICK, J., (after stating the facts.)    This is an appeal from a judgment enjoining the defendant, a proprietor of a hotel, from closing a door leading from the rotunda of the hotel to a saloon kept by plaintiff Belzner.   There is also a cross appeal on

the part of the plaintiffs from that part of the decree which refused to enjoin the defendant from closing another door leading from the saloon into the rear of the rotunda: The facts of the case are fully set out in the statement of facts, but will be briefly recalled here. J. H. Morgan, T. J. Moore and C. D. Gee were each the owner of a lot in the town of Camden, and they owned another lot in common. These four contiguous lots fronted south on Washington street, and extended back to an alley in the rear. The owners of these lots entered into a written contract by which they agreed to construct a three-story brick building covering all of these lots. The contract reserved to each of the parties the ground floor or first story of his individual property, but stipulated that the property owned by them in common, as well as the second and third stories of the building, should be devoted to the purposes of a hotel, each of the parties to pay one-third of the cost of erecting the building, and that the hotel and the business pertaining thereto should be owned and controlled by them jointly. The building was constructed. The west room on the ground floor was owned by plaintiff Moore, and next to it on the east was the rotunda of the hotel. Moore intended to use his room for the purposes of a saloon, and had it constructed with two doors leading from the saloon to the rotunda. Besides these entrances from the hotel, there were three other entrances to the saloon. One on the front from Washington street, one on the west side, and one from the rear, these last being reached by alleys. There was no special contract between the parties about these doors from the saloon to the hotel rotunda, but they were put in the plans for the building by the architect at the suggestion of Moore, with the consent of the other parties; it being done, so Moore testified, as a convenience to the hotel and to increase the trade of the saloon. After these doors between the saloon and the hotel had been used for some eight or nine years, the hotel was rented to the defendant Belser. As he was annoyed by people passing to and fro through the rotunda into the saloon, and for other reasons, he closed these doors, and thereupon this action was brought by Moore, the owner of the saloon room, and his tenant, the saloon keeper, to enjoin defendant from closing the doors.

These doors having been put in the building in accordance with the plans and specifications of the architect with the consent of the owners, counsel for plaintiffs contend that Moore, the owner of the room in which the saloon was kept, thereby acquired an easement and the right to have the doors kept open for a passage from the saloon into the rotunda of the hotel. But an easement is a species of incorporeal hereditament, and is such an interest in land as to come within the statute of frauds, "and can be acquired only by grant, express or implied, or by prescription, which presupposes a grant to have existed." 10 Am. & Eng. Enc. Law, 409. Now, it is clear from the evidence that there was no express grant of an easement shown here. There was a written contract between the owners of this land, which is set out in the statement of facts, but there is no reference to these doors, or to any right of way or easement, and no contract in reference to the doors, either written or parol, is shown by the evidence. It is true that Moore testified that he had these doors put in the plans; that he intended them for the convenience of the hotel, and to increase the trade of the saloon; and that his desire to get these doors was one of the inducements which led him to join the other parties in erecting the building. But, though this may have been one of the motives which induced him to enter into the contract, that does not make it a part of the contract, and he nowhere testifies that the matter of having a way from the saloon to the rotunda was ever mentioned to either of the other parties to the contract. The testimony of the other two parties, both of whom testified in behalf of Mr. Moore, shows that there was no express contract in reference to these doors. All they know about the matter is that the doors were in the plans, and Mr. Moore shows that they were put in them by the architect at Little Rock at his suggestion, no doubt with the consent or acquiescence of the other parties.

There being, then, no grant of such a right of way between the saloon and rotunda, the question arises, can one be implied from the fact that these doors were put there according to the plans and specifications of the architect by consent of the owners of the building? Now, the rule is well settled that the right of an easement by implication never arises except from necessity, as where the owner of land sells a part of it to another

which is wholly surrounded by the land of the vendor, the purchaser is then entitled to a right of way; for, says Blackstone, "if a man grants me a piece of ground in the middle of his field, he at the same time tacitly and impliedly gives me a way to come at it." 2 Blackstone, Com. 36. Otherwise, the grant of the land itself would be defeated. But there is no necessity shown here, for plaintiff has three other entrances to his saloon—one of them from the street on which the hotel fronts, and only a few feet from the entrance to the rotunda of the hotel. So that one going from the bar of the saloon into the street and thence into the rotunda of the hotel goes only a few feet further than one who goes direct from the bar to the rotunda through the doors in controversy. To go direct was a matter of convenience only, from which the grant of an easement is never implied. Now, if a right to use these doors as a passway had been expressly granted to Moore, the owner of the saloon room, it might very well be held that a right of way across the rotunda to reach the doors would be implied from the grant of the doors, but there is no grant of the right to use the doors. The doors are there, but there is no grant. It is doubtful whether these doors are on any part of the property of the plaintiff, for, by reference to the contract between the parties under which the building was constructed, it will be seen that Moore reserved only the ground floor of the saloon room, and that, with the exception of the ground floor of the two other store rooms, all the other part of the building is owned by Morgan, Moore and Gee as tenants in common, and they in turn leased it to the defendant, and he succeeds to all their rights. But if we treat these doors as doors in a party wall put there by consent of the owners of the two lots, no easement could be implied. I do not myself think that one could be implied from an opening without doors, but the fact that there were doors to these entrances capable of being closed and locked shows clearly that it was the intention of these parties to permit the use of these doors at such times and so long as they might be found to be to the mutual convenience and advantage of the owners of the two estates, and when found no longer desirable to close them.

As these three parties owned the hotel, and as one of them owned the saloon room in the same building, it was nothing more

than natural that they should have put these doors there, for they might rent the hotel and saloon room to the same person, and a direct communication from the hotel to the saloon might be desired by the joint lessee of both properties. For this reason the entrances were made and provided with doors, so that they could be opened or closed as occasion or convenience required. So long as these doors remained open, there was an implied license that they might be used as a passway from the saloon to the hotel, but they created no easement in the licensee, and the license was revocable at the will of either party. The right to use such doors being permissive, the use was not adverse, and therefore not a use from which the easement might be acquired by prescription. *Crosdale* v. *Lanigan,* 129 N. Y. 604, 26 Am. St. Rep. 551; *Bates* v. *Duncan,* 64 Ark. 339; 18 Am. & Eng. Enc. Law (2d Ed.), 1127, 1129.

But, if we assume that there was an implied agreement on the part of the owners of this building that the owner of the saloon room should have the right to use these doors, still the right would be limited to the necessity of the case. It would be a way for the use of the guests or other persons connected with the hotel who desired to visit the saloon, and would give no right to the public generally to make a passway of the hotel rotunda to reach the saloon. If such a contract could be implied, it would be implied with the condition that each party should so conduct his business as not to make it a nuisance to the other. In other words, before the owner of such a right comes into equity for relief, he should be prepared to show that he was keeping an orderly house. But the evidence here shows that these doors became a nuisance to the proprietor of the hotel by reason of the fact that men were permitted to become drunk in the saloon, and then come through these doors direct into the hotel, and there commit various indecent acts, such as vomiting and urinating on the floor and using profane and offensive language to such an extent that ladies could not be permitted in the rotunda of the hotel. The defendant, as proprietor of the hotel, had therefore the right to suppress the nuisance and protect his guests by closing the doors.

On the whole case, we are of the opinion that the plaintiff made out no case for the interposition of a court of equity. The judgment against the plaintiffs will be affirmed, but the judgment

against the defendant will be reversed, and the bill dismissed for want of equity.

BATTLE, J., concurred in the judgment. ·