JULIUS A. BAUER & Co., Appellants, v. D. S. CHAMBERLAIN and W. L. BROWN.

**Landlord and tenant:** LEASE: CONSTRUCTION. The plaintiff leased a room from the owner of the building, then in process of construction, for a drug store, which was to have a front and a side entrance. Subsequently the owner decided to change the plan of the build-

ing to one suitable for hotel purposes and procured from plaintiff an extension of the time for completing the room. The revised plans showed a door connecting the store room with the hotel lobby, but when the building was completed this doorway was closed on the hotel side. *Held,* that plaintiff acquired no right either by the original contract, the extension agreement or the revised plans, to have a door connecting the store with the hotel lobby constructed and kept open.

Same:  EASEMENT. It is also held that plaintiff did not acquire an easement of the right of access to and from the lobby of the hotel, either by necessity or implication, as against the owner or his lessee of the balance of the building for hotel purposes.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

THURSDAY, DECEMBER 12, 1912.

ACTION to enjoin the defendant Chamberlain, the owner of a hotel building, and W. L. Brown, the lessee of such building, from interfering with the use by plaintiffs, the lessees of a storeroom in such building, of a certain door opening from the storeroom into the portion of the building occupied as a hotel. Damage is also demanded for the past interference by defendants with the use of such door by the plaintiffs in connection with their business. There was a decree denying to plaintiffs any relief, and they appeal.—*Affirmed.*

*Sullivan & Sullivan,* for appellants.

*Read & Read,* for appellees.

McCLAIN, C. J.—In December, 1902, the defendant Chamberlain was proposing to construct, and, indeed, had in process of construction, a building on the northeast corner of Locust and West Seventh streets in Des Moines, and entered into a written contract of lease with the plaintiffs by which he granted to them for the term of eight years from the com-

pletion of the building, on an agreed monthly rental, the use, for the purpose of a drug store, of a room on the first floor of such building of the dimensions of about eighteen feet on Locust street and about sixty-six feet on Seventh street. The contemplated building, as described, was to be of not less than two stories in height, and it was to be completed within about ninety days from the date of the lease, barring accidents, etc., according to the plans and specifications of Messrs. Proudfoot & Bird, architects. In February following, defendant Chamberlain, desiring to erect a larger building than had at first been contemplated, which might be used for hotel purposes, and the construction of which would require a longer time than that referred to in the lease to plaintiffs, procured from the plaintiffs a written indorsement on said lease as follows: "In consideration that this building be changed to a hotel we agree to the necessary extension of time to complete the drug room and to the changes to be made by the architects Proudfoot & Bird, drug room to be ready for occupancy by June 1st, 1903, if possible. Rental to begin thirty days after drug room is completed. No other drug store to be in this building."

Soon after this indorsement was made, plaintiffs saw a blueprint of the architect's plans for the first floor, which showed not only a front entrance to the room on Locust street and a rear side entrance on Seventh street, but also a door connecting the room which was to be occupied by plaintiffs with the lobby of the portion of the building to be occupied as a hotel. During the construction of the building in accordance with these plans, defendant Brown, who had already an arrangement for a lease of the building for hotel purposes, and who was to some extent looking after the proper construction of the building, noticed that a door was being put in between the storeroom and the lobby in accordance with the revised plans, and raised the question with the plaintiffs whether they should be allowed to have access to the hotel lobby through such door without the payment of additional consideration in the way of rental. The testimony

of the witnesses is in conflict as to what was said at various times on this subject-matter by Brown and by the plaintiffs, but it is not contended for plaintiffs that Brown at any time conceded to plaintiffs the right to have such door kept open and used under the terms of their lease with Chamberlain. The building was so far completed that plaintiffs took possession of their storeroom in February, 1904, before the other portions of the building were yet completed and put in use for hotel purposes in October following. In the meantime the door had been to some extent kept open and used by workmen, but plaintiffs had no occasion to make use of it in connection with their business and had not done so. When the hotel lobby was finished, this doorway was closed up by a blind door on the hotel side, and it has remained closed ever since. Plaintiffs' lease was, by Chamberlain, assigned to Brown in November, 1904, and the final lease between Brown and Chamberlain for the use of the remaining portion of the building for hotel purposes was made in December. Plaintiffs' rights are predicated upon the writings above referred to and upon a claim of an easement by implication or necessity.

I. It is plain that the original lease made by Chamberlain to plaintiffs did not confer upon plaintiffs any right to have constructed and kept open for use an interior door between their storeroom and other portions of the building, for no use of the other portions of the building for hotel purposes was then contemplated, and there is nothing in the leases as to any doors whatever save by reference to plans and specifications which it is conceded did not indicate any other doors than the front entrance from Locust street and the side entrance from Seventh street. It is also plain that the extension of lease set out did not confer upon the plaintiffs any right to have an interior door constructed and maintained from plaintiffs' storeroom to the lobby of the hotel, for the revised plans and specifications therein referred to had not yet been prepared. It appears that, in the conversation between

1. LANDLORD AND TENANT: lease: construction.

Chamberlain and plaintiffs relating to the extension of time for the completion of the building, it was claimed by plaintiffs that they would be seriously damaged by the proposed delay, and that Chamberlain urged upon their attention the fact that the proposed use of the remainder of the building for hotel purposes would be to their decided advantage. But it is not claimed that Chamberlain made any reference to a proposed door leading from the storeroom to the lobby.

Under these circumstances, it seems to us clear that if, in the preparation of the revised plans and in the construction of the building, no doorway between plaintiffs' storeroom and the lobby of the proposed hotel had been provided for, there would have been no breach of contract, nor interference on the part of Chamberlain with any easement right of plaintiffs, and we think it clear also that the subsequent preparation of plans which plaintiffs may have seen, showing a doorway between the storeroom and the hotel lobby and the construction of an opening for such doorway, did not confer any right upon plaintiffs to the use of a door connecting their storeroom with the hotel lobby. No contract right of plaintiffs has therefore been interfered with by defendant Brown in keeping closed, as against plaintiffs, the opening constructed between their storeroom and the lobby of the hotel, unless out of the contract relations between the plaintiffs and Chamberlain some easement by implication or necessity has arisen entitling plaintiffs to the use of such means of communication.

II.   With reference to the claim of an easement, it must be observed that the right of access to and from the lobby would necessarily imply a burden upon the use of the hotel lobby itself. It is not contended that any advantage would have inured to plaintiffs from the opening unless persons were entitled to pass from plaintiffs' storeroom into the hotel lobby and from the hotel lobby into the storeroom. The question then is whether the defendant Brown, in leasing the remaining portion of the building for hotel purposes, took subject to a servitude in

2. SAME: easement.

favor of plaintiffs as tenants of the storeroom. We are unable to see any basis on which such a servitude could rest. There was plainly no such servitude by reason of any strict necessity. Plaintiffs have enjoyed, and are still enjoying, ample means of access to their storeroom by the general public.

An easement by implication does not arise from considerations of mere convenience or advantage. If, at the time plaintiffs took a lease of their storeroom, it was apparent, from the construction of the building and the method of its use, that a communication with the hotel lobby was one of the advantages which would accrue to them from such lease, it may be that an implied agreement that such communication would continue would have arisen. But it cannot be said that at any time there has been any implied agreement arising out of the circumstances under which the written contract was entered into or the premises have been occupied, nor have the plaintiffs been justified in assuming that they were acquiring a right to an interior communication with the hotel lobby. Easements by implication are not to be recognized merely on considerations of advantage or convenience. *Ward v. Robertson,* 77 Iowa, 159; *Walker v. Clifford,* 128 Ala. 67 (29 South. 588, 86 Am. St. Rep. 74); *Belser v. Moore,* 73 Ark. 297 (84 S. W. 219); *Kane v. Templin,* 158 Iowa, 24, decided at the present term.

Finding that plaintiffs have not and never have had any right to use a doorway between their storeroom and the hotel lobby, we reach the conclusion that they are entitled to no relief whatever, either by way of injunction, mandamus, or damages. In view of this conclusion, it is unnecessary to discuss the question whether mandamus would be a proper remedy in such a case.

The decree of the trial court is therefore *Affirmed.*