## McCASTLE v. SCANLON.

1. SET-OFF AND RECOUPMENT—CLAIMS BASED ON TORT COMMITTED AFTER TERMINATION OF CONTRACT.

    Counterclaims, considered as pleas in recoupment based on alleged tortious conduct of plaintiff after defendants had, as they claimed, terminated written agreement for breach of which plaintiff sought damages, were properly refused consideration as basis for affirmative recoveries against plaintiff.

2. PROPERTY—CONVEYANCE—STANDING TIMBER.

    Title to standing timber, being an interest in land, may not be conveyed other than by instrument in writing (CL 1948, § 566.106).

3. LICENSES—SALE OF STANDING TIMBER—REVOCATION.

    Unrecordable written agreement whereby defendants sold plaintiff standing timber on a specific description of land and granted permission to cut and haul it from the property for a period of 1 year was a revocable license, notwithstanding plaintiff gave a consideration therefor.

4. CONTRACTS—CONSTRUCTION—INTENT.

    A contract must be construed, if possible, to effectuate the intent of the parties.

5. SAME—SALE OF STANDING TIMBER—INTENT.

    Written instrument for sale of standing timber, which was not recordable because of omission of required formalities and which contained no words ordinarily found in a conveyance of

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3, 5, 8, 9, 12]  34 Am Jur, Logs and Timber §§ 10, 12.
[2, 3, 5, 8, 9, 12]  Sale or contract for sale of standing timber as within statute of frauds respecting sale or contract of sale of real property.  7 ALR2d 517.
[9, 13]  34 Am Jur, Logs and Timber § 43 et seq.
[10–11]  33 Am Jur, Licenses § 91.
[11]  33 Am Jur, Licenses §§ 92, 99.
[13, 14]  33 Am Jur, Licenses § 98; 34 Am Jur, Logs and Timber § 49.

an interest in real property and which was executed after parties had had a previous oral agreement, formed sole basis for determining intent of the parties.

6. SAME—CONSTRUCTION.

A court may not construe language used by parties to a written instrument other than in its usual significance.

7. TRIAL—CONSTRUCTION OF CONTRACT—BURDEN OF PROOF.

Plaintiff who prepared contract for defendants' sale to him of standing timber on their land had the burden of sustaining theory that the agreement operated as a conveyance to him of the standing timber.

8. PROPERTY—STANDING TIMBER.

Standing timber, until severed, is a part of the realty, but upon severance becomes personalty to which title may pass by bill of sale.

9. LICENSES — BILL OF SALE OF STANDING TIMBER — REVOCATION — WRITTEN INSTRUMENT—CONVEYANCES.

The sale of standing timber by bill of sale with permission to go upon the land, cut and haul it away within a year constitutes a license revocable at any time before severance of the timber notwithstanding it was in writing, since such a license is not the conveyance of an interest in land, especially where it does not contain language usually found in conveyances.

10. SAME—DEFINITION—ASSIGNMENT.

A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it, is founded on personal confidence and, therefore, is not assignable.

11. SAME—CONSIDERATION—REVOCATION.

A license for the doing of some act upon the land of the licensor may be given in writing or by parol, with or without consideration, but in either case is subject to revocation, though constituting a protection to the party acting under it until the revocation takes place.

12. SAME—STATUTE OF FRAUDS.

The statute of frauds has no application to a mere license, since it is not the conveyance of an interest in land (CL 1948, § 566.106).

13. SAME—CUTTING AND REMOVAL OF TIMBER—ASSIGNMENT.

A mere license to cut and remove timber from land of the licensor

is a right personal to the licensee and cannot be assigned by him, and an attempted assignment operates to terminate it.

14. SAME—REVOCATION—ASSIGNMENT.
Licensors were within their rights in revoking license to cut and haul away timber where the licensee assigned his contract to a third person.

Appeal from Muskegon; Sweet (Lucien F.), J., presiding. Submitted April 8, 1953. (Docket No. 29, Calendar No. 45,709.) Decided June 8, 1953.

Action by George McCastle, Jr., against Carl Scanlon and wife for damages resulting from refusal to allow plaintiff to cut and remove timber. Verdict and judgment for plaintiff. Defendants appeal. Reversed and remanded for entry of judgment for defendants.

*Reber & Reber,* for plaintiff.

*Harold H. Smedley* and *Robert J. Danhof,* for defendants.

CARR, J. The declaration filed by plaintiff in this cause alleged that on the 24th of May, 1951, the defendants were the owners of certain land in Muskegon county, and that a written agreement was executed by which they sold and conveyed to plaintiff all trees suitable for lumber, either standing or lying on the ground, on the premises in question, with permission to cut and haul the same within a period of 1 year. Plaintiff further claimed that he took possession of said timber and commenced to cut it, that defendants without justification repudiated the agreement, and that they refused to permit further operations thereunder. The pleading alleged, also, that plaintiff was engaged in the business of manufacturing and selling lumber, that he was purchas-

ing the timber on defendant's property for use in his business, and that as a result of the defendants' refusal to allow him to proceed he sustained damages and loss of profits for which he sought recovery. Subsequently an amended declaration was filed, incorporating the averments of the original declaration except with reference to the matter of damages. It was the claim of plaintiff in the amended pleading that because of defendants' conduct plaintiff suffered the loss of the trees remaining on the property, that the value thereof was in excess of $1,000, and that he was entitled to recover such value.

Defendants filed an answer denying material averments in the declaration and also filed a cross-declaration, defendant Evelyn Scanlon claiming the right to recover damages because of an alleged assault and battery on her person by plaintiff, and both defendants seeking the right to recover for timber that they claimed had been cut on their property after the revocation of permission to plaintiff to proceed under the agreement. A motion to strike defendants' cross-action, or counterclaims, was submitted. The trial judge concluded that such claims did not arise out of the contract that was the basis of plaintiff's alleged cause of action, that they were based on alleged tortious acts on the part of plaintiff after defendants had, as they claimed, terminated the agreement of May 24, 1951, and that, considered as pleas in recoupment, the assertion by defendants of rights to affirmative recoveries was not permissible. Such determination was correct, and the trial judge properly refused to allow consideration of the counterclaims.

It appears from the pleadings and the proofs in the case that prior to the execution of the written agreement in controversy here the parties had, in August or September, 1950, entered into an oral

arrangement under which plaintiff was granted permission to enter on the land of the defendants and to cut and remove timber. It is the claim of plaintiff that at that time he paid defendants the sum of $175, and that in the fall of 1950 he cut and removed approximately 3,500 feet of lumber. He did not continue with the operation during the winter, but in the late spring advised defendants that he wished to resume cutting. It was plaintiff's claim on the trial that after some conversation it was decided that the agreement between the parties should be put in writing, and that he should pay defendants as consideration the sum of $75. Thereupon, plaintiff prepared an instrument which was signed by the defendants and which read as follows:

"Dated this day of May 24th, 1951. Agreement by and between Carl Scanlon and wife, parties of the first part, and George McCastle, Jr., party of the second part. Parties of the first part agree to sell all trees suitable for lumber, either standing or lying on the ground, except some designated around buildings, on following description of land containing 35 acres, more or less, according to government survey, for the sum of 1 dollar and other valuable consideration, with permission to cut and haul same from said property for a period of 1 year from date.

"Description: East 20 acres of SW1/4 of the SW 1/4 of section 27, of Township 11 North, Range 15 West; SW1/4 of SW1/4 except East 20 acres and except South half of West 10 acres, section 27, of Township 11 North, Range 15 West."

The principal question in the case involves the interpretation of the foregoing writing. It was plaintiff's theory on the trial in circuit court, as indicated by his amended declaration and by his testimony, that the agreement should be construed as a conveyance to him of the standing timber on defendants' property, subject to the exceptions indi-

cated therein. Defendants contended that the agreement could not be construed as a grant or conveyance of the timber, and that in legal effect plaintiff had merely a license to enter on the property and to cut and remove trees so long as the license remained in effect. It was their claim that plaintiff had undertaken to convey to a third party rights that were personal to plaintiff under the agreement, and had in terms undertaken to sell to such party a part of the standing timber. Plaintiff's testimony on the trial disclosed that he had made such an agreement with one Morse, and had received by way of consideration the sum of $250. Thereafter Morse and others employed by him entered on the property for the purpose of cutting timber. Defendants forbade them to do so. Thereupon plaintiff undertook to resume cutting and was advised by defendants that he could not do so, and that his rights had been revoked. Such alleged revocation was pleaded by defendants in their answer, and the reason therefor indicated.

At the conclusion of plaintiff's testimony, defendants moved for a directed verdict on the ground that plaintiff had merely a license to cut and remove timber from their land, that no title to the standing timber had passed to him under the agreement, that the license was revocable, that plaintiff's arrangement with Morse constituted an attempted assignment of rights that were personal to plaintiff, and that defendants were justified in refusing to allow Morse to cut timber and likewise in refusing to permit plaintiff to resume operations. The motion was denied, and a subsequent motion made at the conclusion of plaintiff's proofs was also denied. Thereupon the case was submitted to the jury, the trial court specifically charging that plaintiff had the right to assign his interests under the contract to other persons, that his doing so was not a sufficient

reason for the action of the defendants in refusing to permit plaintiff to continue under the agreement, that defendants were liable for damages unless plaintiff or others exercising his claimed rights cut trees that were not suitable for lumber, and that the measure of damages, if a verdict was returned in favor of plaintiff was the fair market value of the timber of which the plaintiff was deprived by the wrongful revocation of the agreement by the defendants at the time of such revocation in January, 1952. The jury returned a verdict in the sum of $1,000 and judgment was entered thereon. Defendants have appealed.

No claim is made that the oral agreement made in August or September, 1950, operated to pass title to the standing timber. Being an interest in land, such title could not have been conveyed other than by instrument in writing. CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906); *Wallace* v. *Kelly,* 148 Mich 336. Plaintiff had merely a revocable license. *Marshall* v. *Heselschwerdt,* 304 Mich 664. The payment by plaintiff to defendants of the sum of $175 does not change the situation in this respect.

May the written agreement of May 24, 1951, be construed as a conveyance of standing timber? It will be noted that the writing contains no words ordinarily found in a conveyance of an interest in real property. Neither was it executed with required formalities to permit it to be recorded. This Court has said in numerous decisions that a contract must be construed, if possible, to effectuate the intent of the parties. In the instant case such intent must be determined from the provisions of the written instrument. The Court may not construe the language used by the parties other than in its usual significance. It must be borne in mind, also, that the writing was prepared by plaintiff. The burden rests

on him to sustain the theory under which his case was tried and submitted.

The situation in *Curran* v. *Gordon,* 169 Mich 250, cited in *Marshall* v. *Heselschwerdt, supra,* was very similar to that in the case at bar. There the owner of property gave to the plaintiff a writing setting forth that for a valuable consideration she did thereby sell to him all the timber on a certain described parcel of land. Subsequently the owner of the property died and title thereto passed to her sons who made a contract with defendant Gordon to cut and remove the timber. Plaintiff brought suit in equity for the purpose of obtaining injunctive relief. A demurrer to the bill of complaint was overruled by the trial court and defendants appealed. It was the claim of defendants in support of their motion that the writing created merely a license to cut timber. In determining that the demurrer should have been sustained, this Court said:

"The writing executed by the parties was a bill of sale of the timber with a license to enter upon the lands and remove it. The timber until it was severed was a part of the realty. The writing does not attempt to convey any interest in lands. Therefore no title to the timber would pass until it was severed from the realty. When severed, it became personal property and passed by the bill of sale. As was said in *Greeley* v. *Stilson,* 27 Mich 153, it was the sale of a future chattel. Such a license may be revoked at any time before the timber is severed. If that were done in the present case, as it is claimed, it concluded the complainant's rights. *Greeley* v. *Stilson,* 27 Mich 153; *White* v. *King,* 87 Mich 107. But it is said the license was in writing, and could not be revoked.

"The writing would not prevent it. A license is not an interest in real estate, and therefore may as well rest in parol as in writing. The statute of frauds is not involved.

"It is claimed that the death of Sarah E. Backus, before complainant severed the timber, worked a revocation of the license. It is so held by this Court. *Estelle* v. *Peacock,* 48 Mich 469; *Nowlin Lumber Co.* v. *Wilson,* 119 Mich 406.

"The complainant shows that he notified Henry N. Backus and Newton D. Backus of his rights to the timber after the mother's death and before the contract was made with Gordon. This would avail him nothing, as the sons would have the same right to revoke the license as the mother had, and the act of the sons in granting to Gordon a right inconsistent with complainant's would work a revocation of the license. 18 Am & Eng Enc Law (2d ed), p 1141."

In .*Wade* v. *Day,* 232 Mich 458, the execution of a deed of real estate was accompanied by the giving of a bill of sale by the grantee to the grantor of standing timber on the property, the instrument reciting that said grantee "has bargained and sold, and by these presents does grant and convey" all of the timber on the land conveyed, with the privilege of entering on said lands from time to time to remove the same. It was further provided that should the grantee desire to clear up any part of the land he should give notice to such effect to his grantor, allowing "one winter's time" to do the work. It may be noted also that the writing which was apparently designated by the parties as a bill of sale ran not only to Day but to his "executors, administrators and assigns, forever." The Court held that in substance the transaction evidenced by the so-called bill of sale involved a reservation of the timber, and that in legal effect the writing was a conveyance of the timber rather than a mere license to remove it. Emphasis was placed on the "apt terms" employed by the parties to indicate their intention. Commenting on the situation, it was said:

"We find terms employed, consistent with a conveyance of realty, and beyond the terms of a mere license. This conveyance fastened rights to the realty to the extent of carrying out its provisions. It will be found, upon an examination of cases of sales of standing timber, that the intention of the parties largely determines the question of whether there is a license, or a grant attaching to the realty. If the contract is made in contemplation of the timber being cut immediately, or the then condition of the timber is what is sold, and a reasonable time for the removal is agreed upon or implied under the circumstances, then the deal relates to personalty. But when the immediate severance of the timber from the land is not contemplated, and right to let it grow remains until the land is wanted for agricultural purposes and notice to remove is given, the conveyance deals with rights in realty. Every word in this conveyance imports an absolute vesting of title to the timber in defendant and negatives a conditional sale or mere license. The sole condition in the conveyance relates to the duty to remove the timber upon notice, and this shows the right to let the same remain and grow until the land was wanted for agricultural purposes. The parties to the conveyance contemplated timber growth and the advantage thereof to defendant."

The rule recognized by the Court in the language above quoted is applicable in the case at bar. The arrangement made between plaintiff and defendants did not contemplate that the standing timber should be allowed to remain for any extended period of time. The right of removal was limited to 1 year. It must be assumed that had the parties intended the conveyance of an interest in land appropriate terms to express such intention would have been used. The writing must be construed as granting a license to enter on the land and cut and remove timber. *Williams* v. *Flood,* 63 Mich 487; *French* v. *Sparrow-Kroll Lumber Co.,* 135 Mich 424, and other

decisions relied on by plaintiff are clearly distinguishable on their facts.

Was the license personal to plaintiff? It will be noted that the agreement did not run to plaintiff and his assigns. There is nothing therein to indicate that the parties contemplated that plaintiff should have the right to transfer to another his interests under the agreement. As above pointed out, he did not become the owner of the standing timber, and it was beyond his power to sell it as such to Morse. This, however, is what he undertook to do. Obviously he was mistaken as to his rights. What he actually attempted is clearly apparent from the following testimony given by him on the trial:

"*Q.* * * * You needed some money so you went to Morse and sold him some of this Scanlon timber?

"*A.* I did.

"*Q.* And he advanced you $250 on it?

"*A.* He did.

"*Q.* And for that $250 you agreed that he could go in there and cut such oak as he wanted as long as they had 8-inch tops, and that when they were delivered at the mill at Hesperia, he would pay you $40 a thousand for them?

"*A.* That is right.

"*Q.* And he was to use his own men in getting the timber out, down, cut and hauled, right?

"*A.* Yes.

"*Q.* Morse was not an employee of yourself, was he?

"*A.* No, he wasn't.

"*Q.* And you had the idea that you could sell all or part of it, (Scanlon timber) to Mr. Morse, so you entered into an agreement with Morse whereby you would attempt to sell to him this timber on Scanlon's place and gave him the right to go in and cut it down, is that right?

"*A.* That is right."

In *Morrill* v. *Mackman,* 24 Mich 279 (9 Am Rep 124), it was held that the right to make exclusive use of land by flooding it, granted by a verbal agreement, created a lease from year to year. The difference between the facts in that case and those in the case at bar are clearly suggested by the following excerpt from the Court's opinion:

"A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it: 3 Kent's Commentaries, p 452; *Cook* v. *Stearns,* 11 Mass 533, 538; *Woodbury* v. *Parshley,* 7 NH 237 (26 Am Dec 739); *Prince* v. *Case,* 10 Conn 375 (27 Am Dec 675); *Wolfe* v. *Frost,* 4 Sandf Ch (NY) 72, 91. It is founded on personal confidence, and therefore not assignable: 3 Kent's Commentaries, p 452; Browne on Statute of Frauds, § 22. It may be given in writing or by parol; it may be with or without consideration; but in either case it is subject to revocation, though constituting a protection to the party acting under it until the revocation takes place. Where nothing beyond a mere license is contemplated, and no interest in the land is proposed to be created, the statute of frauds has no application, and the observance of no formality is important. But there may also be a license where the understanding of the parties has in view a privilege of a less precarious nature. Where something beyond a mere temporary use of the land is promised; where the promise apparently is not founded on personal confidence, but has reference to the ownership and occupancy of other lands, and is made to facilitate the use of those lands in a particular manner and for an indefinite period, and where the right to revoke at any time would be inconsistent with the evident purpose of the permission; wherever, in short, the purpose has been to give an interest in the land, there may be a license but there will also be something more than a license, if the proper formalities

for the conveyance of the proposed interest have been observed. What that interest shall be called in the law may depend upon the character of the possession, occupancy or use, the promisee is to have, the time it is to continue, and perhaps upon the mode in which the compensation, if any, is to be made therefor. It may be an easement or it may be a leasehold interest; or if the proper grant or demise has not been executed for the creation of either of these, the permission to make use of the land may still constitute a protection to the party relying upon it, until withdrawn."

In *Ward* v. *Rapp,* 79 Mich 469, it was held that verbal permission to enter on land and cut timber was a license, personal to the licensee, and not assignable. Whether such a license is granted orally or by instrument in writing obviously cannot affect its nature and incidents. See, also, *Sweeney* v. *Hillsdale County Board of Road Commissioners,* 293 Mich 624.

The question here at issue will be found discussed in an annotation in 130 ALR 1253. Citing numerous decisions, including *Ward* v. *Rapp, supra,* the following summarized statement is made:

"According to the weight of authority, a mere license to cut and remove timber from land of the licensor is a right personal to the licensee, and cannot be assigned by him." (p 1263).

In *Polk* v. *Carney,* 17 SD 436 (97 NW 360), an agreement in writing for the cutting of timber, and its delivery as specified, was held to be merely a license which was revoked by a subsequent conveyance by the licensor to a third party. In discussing the interpretation of the writing, it was said:

"By this executory agreement with Schleuning, Twitchell obtained a personal privilege amounting to no more than a license to enter upon the land for the purpose of cutting and removing the timber

within a reasonable time. Upon the theory that the owner may, without the slightest reluctance, grant to one person a license to go upon his land for the purpose of cutting and removing timber growing thereon, and at the same time and always refuse to accord such privilege to others, the courts have uniformly held that a license is personal in character and not assignable. That a license to enter on land and cut timber is revoked by a conveyance of the fee was squarely determined by this court in *Price & Baker Company* v. *Madison,* 17 SD 247 (95 NW 933). Many cases go to the extent of holding that such a license is extinguished by an attempt on the part of the licensee to transfer it to another. *Mendenhall* v. *Klinck,* 51 NY 246; *Dark* v. *Johnston,* 55 Pa 164 (93 Am Dec 732); *Cowles* v. *Kidder,* 24 NH 364 (57 Am Dec 287); *Bates* v. *Duncan,* 64 Ark 339 (42 SW 410; 62 Am St Rep 190); *Ruggles* v. *Lesure,* 24 Pick (41 Mass) 187, 190; *Jackson* v. *Babcock,* 4 Johns (NY) 418; 18 Am & Eng Ency of Law, 1143. No interest in the fee passes, and the timber adheres to and is a part of the soil until severed. *Claflin* v. *Carpenter,* 4 Metc (45 Mass) 580 (38 Am Dec 381); *Garner* v. *Mahoney,* 115 Iowa 356 (88 NW 828); *Halleck* v. *Mixer,* 16 Cal 574. The foregoing cases also sustain the proposition that a conveyance of the land to a third person includes the timber, and operates to revoke such nonassignable license. To the same effect are the following authorities: *Drake* v. *Wells,* 11 Allen (93 Mass) 141; Cooley on Torts, 304."

Of like import is *United States Coal & Oil Company* v. *Harrison,* 71 W Va 217 (76 SE 346; 47 LRA NS 870). There a reservation in a deed of the right to sell and remove such timber from the land conveyed as the grantors might wish to sell or use, with a right of way for removal, created merely an unassignable license which was revoked by an attempt to assign it. After discussing the factual situation, the court said:

"Thus viewed, the reservation amounts to no more than a personal covenant, extending a privilege, personal to the grantors and not assignable to third persons, who might, under the influence of motives not contemplated, proceed to take all the timber or an undue amount thereof, and in a reckless and injurious manner. They reserved no interest in the land except right of ingress or egress to remove such timber as they should cut or cause to be cut, a mere incident of the license. Being, therefore, not coupled with an interest, the license was revocable, and was terminated by the attempted assignment thereof. *Blaisdell* v. *Railroad Co.,* 51 NH 483; *Polk* v. *Carney,* 17 SD 436 (97 NW 360); *Fischer* v. *Johnson, Lane & Co.,* 106 Ia 181 (76 NW 658); *Bates* v. *Duncan,* 64 Ark 339 (42 SW 410, 62 Am St Rep 190)."

In the case at bar the license granted by defendants to plaintiff must be regarded as personal in character. As above pointed out, the writing evidencing the agreement of the parties contains nothing indicating authority on plaintiff's part to assign to a third party the rights and privileges granted to him. The record discloses that there had been prior dealings between plaintiff and defendants, and it is a matter of inference that, based on their acquaintance with plaintiff and with his methods of operation, defendants were willing to grant the license to him but not to extend the privilege of entering on their property and cutting and removing timber to others to whom plaintiff might attempt to sell or assign. Under the circumstances defendants were within their rights in revoking the license and refusing to allow plaintiff or his assignee to cut additional timber. The motion for a directed verdict should have been granted.

The conclusions reached with reference to the issues above considered render it unnecessary to discuss other questions raised by counsel in their briefs.

The judgment of the trial court is reversed and the case remanded with directions to set aside the judgment in plaintiff's favor and to enter judgment for defendants. Appellants may have costs.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.